1
2
3
4
5
6
7

8               **UNITED STATES DISTRICT COURT**

9               **EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  AMBER MORENO, | )  Case No.: 1:21-cv-00865-JLT-BAM |
| 12            Plaintiff, | )<br>)  ORDER GRANTING IN PART DEFENDANT<br>)  BENAS' MOTION TO DISMISS |
| 13     v. | )<br>) |
| 14  CITY OF PORTERVILLE, MICHAEL<br>    BENAS, GARY MILLER, and MARK<br>15  AZEVEDO, | )  (Doc. 31)<br>)<br>)  ORDER GRANTING IN PART DEFENDANTS |
| 16            Defendants. | )  CITY OF PORTERVILLE, MILLER, AND<br>)  AZEVEDO'S MOTION TO DISMISS<br>) |
| 17 | )  (Doc. 32)<br>) |

18

19          Plaintiff alleges that she was the subject of sexual harassment, discrimination, and retaliation

20   while employed by the Porterville Police Department. (Doc. 30.) She asserts violations of the

21   California Fair Employment and Housing Act and Title VII of the Civil Rights Act of 1964 against the

22   City of Porterville, Corporal Michael Benas, Sergeant Gary Miller, and Lieutenant Mark Azevedo

23   ("Defendants"). (*Id.*)

24          Porterville, Miller, and Azevedo ("City Defendants") move to dismiss Miller as a defendant

25   and dismiss Plaintiff's Second Amended Complaint "in whole or part" pursuant to Rule 12(b)(6) of

26

27

28

1

the Federal Rules of Civil Procedure. (Doc. 32-1 at 1-2.) Benas moves to dismiss untimely allegations[1] contained in the SAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*See generally* Doc. 31-1.) Plaintiff opposes dismissal, asserting that certain allegations can be used as background evidence, the continuing violation doctrine applies, and the remaining allegations are not time-barred. (*See* Docs. 35, 36.) The Court finds the matters suitable for decision without oral argument pursuant to Local Rule 230(g) and General Order 618. For the reasons set forth below, Defendants' motions to dismiss (Docs. 31, 32) are **GRANTED IN PART**.

## I.      Background and Allegations

Plaintiff alleges that upon joining the Porterville Police Department as a full-time officer in March 2011 and throughout her career there, she was "subjected to sexual harassment, as well as discrimination based upon her gender and her sexual orientation, which created a hostile work environment that ultimately forced her to quit." (Doc. 30 at ¶ 14.)[2] She also claims she was retaliated against for reporting the discrimination on behalf of herself and other female officers. (*Id.* at ¶ 18.)

### A.      Sergeant Miller

Miller became Plaintiff's direct supervisor in 2015, and during that time, Miller (1) "often asked Plaintiff] about her sexual orientation and questioned why she was gay"; (2) "would tell Plaintiff that being gay is a choice and women were made to have babies and be at home 'cooking in the kitchen'"; (3) "often made comments about how Plaintiff would prefer men if she tried them and

---

[1] The scope of Benas' request is not entirely clear. For example, Benas initially states that he moves to dismiss Plaintiff's third cause of action, (Doc. 31 at 1), but then asserts that he seeks dismissal of all "untimely allegations"—"i.e. paragraphs 19 through 24" of the Second Amended Complaint. (*Id.* at 2, 4.) In his conclusion, Benas requests dismissal of "Plaintiff's SAC, or individual parts of it as detailed above." (*Id.* at 5; *see also* Doc. 38 at 6.) Finally, in his reply, Benas explains that the remedy sought by the instant motion is "i.e., dismissal of paragraphs 19 through 24 of the Second Amended Complaint as against Defendant Benas . . ." (Doc. 38 at 2, n.1.) Benas raises no challenge to the remaining causes of action that may warrant dismissal of the entire SAC. Upon consideration, the Court declines to determine what other, if any, allegations Benas contends are "untimely." As such, the Court limits its examination to the factual allegations pertaining to Benas—paragraphs 19 through 28 of the complaint—but will not dismiss untimely allegations by reference to paragraph numbers.

[2] Plaintiff filed a First Amended Complaint on October 18, 2021. (Doc. 17.) The parties then stipulated to the Court granting Plaintiff leave to file a Second Amended Complaint, which it did. (Docs. 28, 29.) Accordingly, Plaintiff's Second Amended Complaint, (Doc. 30), is the operative complaint.

she should give an old man like him a shot"; and (4) "would also tell Plaintiff she was 'easy-on-the-eyes' and [] ask her if an old man like him could ever be her type." (Doc. 30 at ¶ 29.) Plaintiff alleges that upon returning to the Department after a brief resignation, she was told she would no longer report to Miller, yet he became her direct supervisor again in 2019. (*Id*. at ¶ 30.) Plaintiff asserts that during that time, Miller (1) made comments about the job not being for women and that women belong in the kitchen; (2) often bent over, showing Plaintiff his buttocks, and asked her if she liked what she saw; and (3) would tell Plaintiff she was "'easy-on-the-eyes' and it was too bad she was gay." (*Id*.) Plaintiff further alleges that Miller would make comments to Plaintiff about other female officers and tell her how "incompetent females are." (*Id*.) Plaintiff asserts that Miller's "inappropriate comments created a sexually hostile work environment." (*Id*.) Finally, Plaintiff alleges that in February 2019, she resigned as a Field Training Officer and Miller told her that (1) it was "not a good look for her if she ever wanted to apply to another police department"; (2) "she was being an ungrateful 'little bitch;'" and (3) she "needed to be more of a 'company man.'" (*Id*. at ¶ 31.)

### B.      Lieutenant Azevedo

Plaintiff alleges that Azevedo began making "unwanted sexual advances" toward her, including inviting her to his home when his wife was not there. (Doc. 30 at ¶ 41.) Plaintiff asserts she politely declined because Azevedo's wife was her friend, but Azevedo "did not take no for an answer." (*Id*.) Azevedo continued to invite her over. (*Id*.) Plaintiff left for her Army Reserve duty in August 2017 and returned in December 2017, at which point Azevedo resumed making advances toward her. (*Id*. at ¶ 42.) In February 2019, Azevedo again asked Plaintiff to come "hang out" and "have beers" when his wife was not home. (*Id*. at ¶ 43.) Plaintiff alleges that Azevedo told her he was getting a divorce so "it was okay to hang out with him" and that he "could not get in trouble anymore with his 'soon to be ex-wife.'" (*Id*.) Plaintiff asserts that in response, she told Azevedo that his "hitting on other women was probably the reason for his divorce." (*Id*.) From that point forward, Azevedo began retaliating against Plaintiff. (*Id*.)

Azevedo's retaliatory acts included: (1) writing her up despite the lack of policy violation; (2) atypically reviewing Plaintiff's reports; and (3) "pull[ing]" Plaintiff into his office to criticize her work on at least three occasions. (Doc. 30 at ¶¶ 44-45.) At that point, Plaintiff asked Azevedo "what he

wanted from her and why she was being treated this way." (*Id*. at ¶ 45.) Azevedo said "she had put a target on her back that would go away eventually." (*Id*.) Plaintiff alleges she asked Azevedo if he was trying to get her to quit and Azevedo replied that he was "testing her," and if she applied to another department, she would be "blackballed." (*Id*.) Azevedo continued to engage in retaliatory conduct, such as: (1) "unjustifiably criticizing" Plaintiff's work; (2) embarrassing and humiliating her in front of other officers; (3) denying her overtime because she "did not deserve it"; (4) denying her personal time off; (5) assigning her to different work assignments as "punishment" for being injured and in retaliation for reporting the sexual harassment of other female officers; (6) ordering her to begin her shift earlier than scheduled; (7) ordering her to the shooting range without notice and specifically requesting to be informed if she failed to attend; and (8) making comments encouraging Plaintiff to resign from the SWAT team "since she's 'always' getting hurt." (*See id*. at ¶¶ 46-54.)

### C.    Corporal Benas

Benas, who was initially Plaintiff's Field Training Officer and eventually achieved the rank of Corporal, sexually harassed her on an "ongoing" basis during her tenure with the Department. (*See* Doc. 30 at ¶¶ 19-28.) Benas (1) made "many sexually inappropriate comments" to her; (2) repeatedly asked to see Plaintiff outside of work hours; (3) called Plaintiff for assistance during traffic stops to ask her whether women were "hot"; (4) made Plaintiff "shake out" women's bras during traffic stops on "10-15" occasions; and (5) showed Plaintiff nude photographs. (*Id*. at ¶¶ 19-21.)

Benas' conduct "eventually became so intolerable" that she left the Department but returned "shortly after she left" in 2015. (Doc. 30 at ¶ 22.) She returned after learning that Benas was no longer going to be working for the Department. Nevertheless, Benas returned to the Department in December 2018 and continued his conduct of asking whether Plaintiff thought women were hot and making her shake out their bras. (*Id*. at ¶ 23.) From February 2019 to April 2019, Benas began sexually harassing other female officers, which created a "sexually hostile work environment." (*Id*. at ¶ 24.) In March 2020, Benas licked the inside of a donut and asked Plaintiff if "that was how 'it' was done." (*Id*. at ¶ 25.) At the time Benas was the Acting SWAT Sergeant at the time, and she did not feel like she could complain without suffering retaliation. (*Id*.) Finally, in June 2020, Benas made inappropriate comments to Plaintiff, which included (1) asking her to attend a party with him so the two of them

could "check out all the 'hot moms'"; (2) making comments and noises to other officers during a work training about her buttocks; and (3) telling Plaintiff she "looked 'damn fine'". (*Id*. at ¶¶ 26-27.) As a result, Plaintiff alleges that Benas' "ongoing sexual harassment ... after he returned to the [Department] … created a hostile work environment that was a substantial factor underlying Plaintiff's constructive termination." (*Id*. at ¶ 28.)

Following her resignation in July 2020, Plaintiff alleges she filed a complaint with the United States Equal Employment Opportunity Commission on October 9, 2020, which cross-filed her complaint with the California Department of Fair Employment and Housing. (Doc. 30 at ¶¶ 13, 56.) The EEOC issued Plaintiff a right-to-sue notice on May 18, 2021.

## II.      Legal Standard

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, under Rule 12(b)(6), "review is limited to the complaint alone." *Cervantes v. Porterville of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted).

"The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court "will dismiss any claim that, even when construed in the light most favorable to

5

plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). To the extent pleading deficiencies can be cured by the plaintiff alleging additional facts, leave to amend should be granted. *Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## III.   Discussion and Analysis

### A.   FEHA statute of limitations

Defendants first argue that Plaintiff's SAC contains allegations of conduct that falls outside of the limitations period under the FEHA. (*See* Doc. 31-1; Doc. 32-1 at 6-7.) City Defendants argue that "for any unlawful conduct Plaintiff alleges occurred before January 1, 2020, she had one year to file a complaint with the DFEH. She filed her EEOC complaint on October 9, 2020; therefore, any alleged conduct that occurred before October 9, 2019 is statutorily barred as a result of Plaintiff's failure to timely exhaust her administrative remedies." (Doc. 32-1 at 6-7.) Benas' argument is essentially the same. (Doc. 31-1 at 3.) Plaintiff asserts that the alleged incidents occurring on or after January 1, 2019 were not yet time-barred and were thus, subject to the enlarged statute of limitations. (Doc. 35 at 4; Doc. 36 at 3.) The Court agrees.

The parties' dispute concerns a recent amendment to the FEHA statute of limitations and the extent to which it applies to conduct occurring prior to the new statute's effective date. Under the former statute, a plaintiff was required to file a charge with DFEH within one year of an alleged violation. Cal. Gov't Code § 12960(d) (2018). Effective January 1, 2020, the limitations period for FEHA claims was extended from one to three years. *See* Cal. Gov. Code § 12960(e) (as amended by A.B. No. 9 § 1, 2019–20 Sess. (Cal. 2019)). Furthermore, the California Supreme Court held that:

> As long as the former limitations period has not expired, an enlarged limitations period ordinarily applies and is said to apply prospectively to govern cases that are pending when, or instituted after, the enactment took effect. This is true even though the underlying conduct that is the subject of the litigation occurred prior to the new enactment.

*Quarry v. Doe I*, 53 Cal. 4th 945, 956 (2012). In other words, "until the limitation period has run it may be extended, but after it has run, a potential defendant may rely upon it in conducting his affairs." *Singer Co. v. County of Kings*, 46 Cal. App. 3d 852, 866 (1975). However, "[o]nce a claim has lapsed (under the formerly applicable statute of limitations), revival of the claim is seen as a retroactive

application of the law under an enlarged statute of limitations. Lapsed claims will not be considered revived without express language of revival.[3]" *Id.* at 957*; see also Chenault v. U.S. Postal Serv.*, 37 F.3d 535, 539 (9th Cir. 1994) ("[A] newly enacted statute that lengthens the applicable statute of limitations may not be applied retroactively to revive a plaintiff's claim that was otherwise barred under the old statutory scheme because to do so would alter the substantive rights of a party and increase a party's liability.").

If a claim has *not* lapsed under the former statute as of the enlarged statute's enactment date, application of the enlarged statute is appropriate to preserve claims that were timely under the former statute. *See Jordan v. Herrera*, 2003 WL 22668840, at *4 (C.D. Cal. Nov. 7, 2003) ("A claim is barred, or 'stale,' if the applicable statute of limitations period expires prior to the enactment of the statutory enlargement."); *see also Streets v. Space Sys./Loral, LLC*, 2021 WL 4146962, at *5 (N.D. Cal. Sept. 13, 2021) (finding claim timely where section 12960(e) "became effective" before claim lapsed under old rule). Such an application is not considered retroactive. *See Mudd v. McColgan*, 30 Cal. 2d 463, 468 (1947) ("It is settled law of [California] that an amendment which enlarges a period of limitation applies to pending matters . . . not already barred, *without retroactive effect*.") (emphasis added).

The legal authorities upon which Benas relies do not support his position. (*See* Doc. 31-1 at 3, citing *Jones v. Glenmede Tr. Co.*, 2021 WL 2555436, at *5-6 (E.D. Pa. June 22, 2021); *Campbell v. City of Trussville*, 2021 WL 1610617, at *2 (N.D. Ala. Apr. 26, 2021).) Neither of these cases contemplate the issue of an enlarged statute of limitations. *Jones* dealt with the timeliness of certain allegations under Title VII and the ADEA wherein the plaintiff agreed that untimely allegations could not be included. 2021 WL 2555436, at *5-6. The court focused its attention on claims that would be dismissed with prejudice and those that would not. *See id*. The court in *Campbell* only briefly noted the ADEA's limitations period under Alabama law before moving on to a continuing violation discussion. *See* 2021 WL 1610617, at *2. Moreover, these out-of-circuit authorities have no binding

---

[3] In amending section 12960(e), the California Legislature expressly rejected revival. *See* A.B. No. 9 § 3 ("This act shall not be interpreted to revive lapsed claims.").

1    effect on this Court and do not bear on the interpretation of California statutes.

2         City Defendants cite to *Myers v. Philip Morris Companies, Inc.*, 28 Cal. 4th 828 (2002) to

3    support the contention that statutes generally operate prospectively rather than retroactively. (*See* Doc.

4    32-1 at 6, quoting *Myers*, 28 Cal. 4th at 840.) *Myers* addressed an amended statute, which terminated

5    statutory immunity that had been granted previously to tobacco companies. *Myers*, 28 Cal. 4th at 840.

6    The distinction lies in the court's holding that application of the amended statute "would indeed" be a

7    retroactive application of that statute . . ." *Id.* As stated, it is settled in California that when a claim has

8    not yet lapsed under the former statute, application of an enlarged statute to preserve timely claims is

9    *not* retroactive. *Mudd*, 30 Cal. 2d at 468; *Quarry*, 53 Cal. 4th at 956. For this reason, the holding in

10   *Myers* does not apply to the enlarged limitations period for FEHA claims.

11        More importantly, Defendants offer neither authority nor explanation to support their positions

12   that any allegations of conduct occurring before October 9, 2019 are barred. In fact, they appear to

13   acknowledge that the applicability of an enlarged statute of limitations rests on whether a claim was

14   time-barred when the enlarged statute became effective. (*See* Doc. 31-1 at 3; Doc. 32-1 at 6, citing

15   *Singer*, 46 Cal. App. 3d at 866.) Despite this, Defendants erroneously assert that allegations of conduct

16   occurring before January 1, 2020 are subject to the former one-year limitations period. An enlarged

17   statute of limitations applies to preserve claims that had not yet lapsed at the time of enactment; it does

18   not completely bar otherwise timely claims. *Jordan*, 2003 WL 22668840, at *4; *Streets*, 2021 WL

19   4146962, at *5.

20        In *Streets*, the plaintiff brought a claim for age discrimination in violation of the FEHA. 2021

21   WL 4146962, at *5. Streets alleged that the defendant failed to rehire him in March 2019. *Id*. The

22   court determined that his claim was not barred based on the enlarged statute's effective date:

23           This allegation is included in Streets' second [DFEH] charge, which was filed on
24           May 22, 2020. Under FEHA's former one-year deadline imposed by section 12960,
             the charge would have been untimely. However, the three-year extension applies in
25           this instance to preserve Streets' failure to rehire age discrimination claim because
             the extension *became effective* before the claim would have otherwise lapsed under
             the prior version of section 12960.
26

27   *Id*. at *5 (emphasis added). In other words, under the former statute, Streets would be required to file a

28   complaint (or "charge") by March 2020. Because he filed in May 2020, his claim would have been

untimely under the former statute. However, because the extension became effective before March 2020, the enlarged statute applied to preserve his claim.

Thus, the question is not whether any allegations are based on conduct occurring within one year prior to the filing of Plaintiff's complaint on October 9, 2020; that would simply be an application of the former statute. Rather, under the new statute, if a claim was not yet time-barred under the former statute *at the time of enactment* of the enlarged statute (*i.e.*, January 1, 2020), the enlarged period applies. Applying this rule to the instant matter, as of January 1, 2020, allegations of conduct occurring *on or after* January 1, 2019 were not yet time-barred under the former one-year statute of limitations. Thus, these allegations are timely and to this extent, the Court denies Defendants' motions to dismiss. (Docs. 31, 32.) Meanwhile, alleged conduct *before* January 1, 2019 occurred more than one year prior to the effective date of section 12960(e), as amended. As Plaintiff appears to concede, these allegations are time-barred under the FEHA unless they can be preserved by the continuing violation doctrine. (*See* Doc. 35 at 4; Doc. 36 at 3.)

**B.      Continuing violation doctrine**

The continuing violation doctrine "allows liability for unlawful employer conduct occurring outside the statute of limitations if it is sufficiently connected to unlawful conduct within the limitations period." *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 802 (2001); *see also Blue Fountain Pools & Spas Inc. v. Superior Ct. of San Bernardino County*, 53 Cal. App. 5th 239, 250 (2020) ("an employer is liable for actions that take place outside the limitations period if these actions are sufficiently linked to unlawful conduct that occurred within the [FEHA] limitations period." (internal quotation marks omitted)). For the doctrine to apply, an employee must demonstrate that an "employer's unlawful actions are (1) sufficiently similar in kind to those within the statutory period; 2) have occurred with reasonable frequency (recurring rather than isolated); (3) and have not acquired a degree of permanence in the sense that an employer's statements and actions make clear to a reasonable employee that any further efforts to end harassment will be futile." *Garcia v. Los Banos Unified Sch. Dist.*, 418 F. Supp. 2d 1194, 1219 (E.D. Cal. 2006) (citing *Richards*, 26 Cal. 4th at 823-24); *see also Fahnestock v. Paychex, Inc.*, 2014 WL 12572917, at *6 (C.D. Cal. Aug. 19, 2014), *aff'd sub nom.* 674 F. App'x 708 (9th Cir. 2017) (same); *Oreizi v. County of Fresno*, 2021 WL 3883659, at

1    *6 (E.D. Cal. Aug. 31, 2021) (same).

2              1.     Benas

         Benas contends that the continuing violation doctrine does not apply to preserve Plaintiff's

time-barred allegations (Doc. 31-1.) Plaintiff argues that the continuing violation doctrine applies to

allegations of conduct occurring *after* Benas' return to the Department in December 2018 because his

conduct was continuous from that point forward. (Doc. 35 at 4.) The dates and acts of alleged conduct

during this period are not clear. Plaintiff alleges Benas returned in December 2018 but makes no

allegations that Benas' conduct resumed immediately upon his return. (*See* Doc. 30 at ¶ 23.)

         Additionally, Plaintiff argues that "any claims that Plaintiff had based upon Defendant Benas'

illegal conduct commencing on or after January 1, 2019, less than one month after Defendant Benas

returned, were not yet time-barred and are entitled to the extended three-year FEHA statute of

limitations." (Doc. 35 at 4.) As discussed above, this is consistent with the Court's finding that

allegations of conduct occurring on or after January 1, 2019 are not time-barred. Thus, any potential

applicability of the doctrine would, at most, concern allegations from Benas' return in December 2018

to January 1, 2019. The Court finds it futile to engage in such analysis because the SAC, (1) does not

identify the conduct, *if any*, that occurred within that specific period; and (2) any *potential* conduct, as

alleged, would necessarily be included within the timely allegations of conduct occurring on or after

January 1, 2019. (Doc. 30 at ¶ 23.) Thus, to the extent Plaintiff seeks to base her claim against Benas

on conduct occurring between December 2018 and January 1, 2019, these allegations are dismissed as

time barred.

             2.     Miller

         City Defendants contend that the continuing violation doctrine does not save Plaintiff's "stale"

allegations. (Doc. 32-1 at 8.) More specifically, they argue that for conduct predating Plaintiff's

resignation in May 2015, a degree of permanence had been reached. (*See id*. at 8-9.) As for post-May

2015 conduct, City Defendants assert that the alleged conduct was not sufficiently frequent. (*See id*. at

9.)[4] Plaintiff avers that "the entire time period of the hostile environment created by the

---

[4] City Defendants also argue that a "continuing violation claim" fails if Plaintiff "knew, or through the exercise of
reasonable diligence would have known, she was being discriminated against at the time the earlier events occurred. (Doc.

1    discrimination, harassment and retaliation to which Plaintiff was subjected may be considered for the

2    purposes of determining liability." (Doc. 36 at 4.)

3        Plaintiff asserts a claim for sexual harassment in violation of the FEHA against Miller. (Doc.

4    30 at ¶¶ 65-68.) City Defendants erroneously argue Miller "must be dismissed from this lawsuit"

5    because the most recent allegation pertained to conduct occurring in February 2019—outside the

6    limitations period. (Doc. 32 at 9.) As discussed above, any allegations of Miller's conduct occurring

7    on or after January 1, 2019 are not time-barred. Thus, the remaining allegations are those concerning

8    conduct that took place in 2015, prior to Plaintiff's initial resignation. (*See* Doc. 30 at ¶ 29.)

9                            *a.      Permanence*

10        For the continuing violation doctrine to apply, a plaintiff "must demonstrate that the situation

11    had yet to reach a state of permanence prior to the statute-of-limitations period." *Fahnestock*, 2014

12    WL 12572917, at *8. Barring conduct constituting a constructive discharge, permanence is reached—

13    and the statute of limitations begins to run—"not necessarily when the employee first believes that his

14    or her rights may have been violated, but rather, *either* when the course of conduct is brought to an

15    end, as by the employer's cessation of such conduct or by the employee's resignation, *or* when the

16    employee is on notice that further efforts to end the unlawful conduct will be in vain." *Richards*, 26

17    Cal. 4th at 823 (emphasis in original). Put differently, if a plaintiff is on notice that either the

18    wrongdoer's conduct is not likely to end, or if her complaints fall upon deaf ears, or if—perish the

19    thought—her grievances are expressly denied, the conduct has likely reached a degree of permanence.

20        City Defendants generally assert that "Plaintiff admits she resigned in 2015 because [Benas']

21    misconduct became 'so intolerable.'" (Doc. 32 at 8.) As such, City Defendants argue that if Plaintiff's

22

23    ──────────────
     32-1 at 8, citing *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1184 (10th Cir. 2003).) This argument is misplaced. The
24    court in *Davidson* first noted that the 10th Circuit previously applied this rule. *See Davidson*, 337 F.3d at 1184 (quoting
     *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1311 (10th Cir. 1999); *Martin v. Nannie & Newborns, Inc.*, 3 F.3d
25    1410, 1415 (10th Cir. 1993)). However, City Defendants fail to mention that *Davidson* subsequently clarified that *Nat'l
     R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (emphasis added), "implicitly overruled *Bullington*, *Martin* and
26    other Tenth Circuit cases to the extent these cases held that recovery on a Title VII hostile work environment claim is not
     available for acts taken outside the statutory time period where the plaintiff knew or should have known the conduct was
27    discriminatory when the acts occurred." *Id.* at 1185 (citing *Boyer v. Cordant Technologies, Inc.*, 316 F.3d 1137 (10th Cir.
     2003)). *Richards* equally rejected this requirement. *See Richards*, 26 Cal. 4th at 821 (noting the incongruities that would be
28    created by holding that "the statute of limitations begins to run at the first notice that an employee's rights have been
     violated").

                                              11

2015 resignation "does not establish a 'degree of permanence,' then the third criterion would be meaningless." (*Id*.) On this ground, City Defendants seek dismissal of all allegations predating Plaintiff's 2015 resignation. (*Id*. at 8-9.)

Plaintiff contends that though the *Richards* court "mentions **in dicta** that 'an employee's resignation' brings the course of conduct creating a hostile work environment to an end, it was obviously referring to a permanent separation of the employment relationship." (Doc. 36 at 5 (emphasis in original).) Plaintiff asserts that the "one-month break in [her] employment with the [] Department in 2015 . . . no more invalidates her hostile work environment claim than the 301 day break" considered in *Morgan*.[5] (*Id*.) Relying on *Richards'* definition of "permanence," Plaintiff also argues that when she was contacted by her Captain shortly after she left the Department, who informed her that Benas was no longer employed with the Department, Miller would no longer supervise her, and she would be given a raise, permanence had not yet occurred. (*Id*.)

The defendants offer no persuasive authority related to the permanence of the one-month break in service, nor is it clear that Plaintiff's initial resignation was a constructive discharge. (*See* Doc. 30 at ¶¶ 28, 59, 63, 71, 75, limiting allegations of constructive discharge to Benas and Porterville.) Assuming it was not a constructive discharge, and applying *Richards* to the facts of this case, Miller's conduct ceased in 2015, which established a degree of permanence. Additionally, Plaintiff's argument

---

[5] Plaintiff refers to the following illustration:

> (1) Acts on days 1–400 create a hostile work environment. The employee files the charge on day 401. Can the employee recover for that part of the hostile work environment that occurred in the first 100 days? (2) Acts contribute to a hostile environment on days 1–100 and on day 401, but there are no acts between days 101–400. Can the act occurring on day 401 pull the other acts in for the purposes of liability? In truth, all other things being equal, there is little difference between the two scenarios as a hostile environment constitutes one "unlawful employment practice" and it does not matter whether nothing occurred within the intervening 301 days so long as each act is part of the whole. Nor, if sufficient activity occurred by day 100 to make out a claim, does it matter that the employee knows on that day that an actionable claim happened; on day 401 all incidents are still part of the same claim. On the other hand, if an act on day 401 had no relation to the acts between days 1–100, or for some other reason, *such as certain intervening action by the employer*, was no longer part of the same hostile environment claim, then the employee cannot recover for the previous acts, at least not by reference to the day 401 act.

*Morgan*, 536 U.S. at 118 (emphasis added). However, Plaintiff fails to recognize the distinction: there was intervening action. Plaintiff's Captain reassigned Miller so that he no longer supervised Plaintiff. Moreover, *Morgan* did not concern FEHA claims, nor did it consider "permanence"—the importance of which *Richards* emphasized, and which California courts have since found important to address. *See, e.g., Richards*, 26 Cal. 4th at 824; *Fahnestock*, 2014 WL 12572917, at *8; *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1057 (2005); *Brager v. Costco Wholesale Corp.*, 2021 WL 4443010, at *5 (E.D. Cal. Sept. 28, 2021).

appears to be that Miller's conduct had not become permanent because her Captain assured her *after she resigned* that she would not be supervised by Miller, meaning it was not clear that future efforts would be in vain. The Court is not persuaded. Plaintiff's resignation occurred prior to her Captain's assurances. There is no indication that the assurances she received "shortly after" resigning were communicated to Plaintiff prior to her resignation that would make clear further efforts would be beneficial. Plaintiff resigned in 2015 after enduring conduct that had become "intolerable," indicating that she was on notice that further efforts to end the conduct would be futile or in vain. *Richards*, 26 Cal. 4th at 823; *see also McKenney v. United Parcel Serv.*, 2013 WL 12057488, at *2 (S.D. Cal. June 17, 2013), *aff'd sub nom.* 600 F. App'x 538 (9th Cir. 2015) (finding a voluntary transfer for the purposes of avoiding alleged harasser created a degree of permanence). It appears to the Court that the unlawful conduct had become permanent as of Plaintiff's initial resignation date in 2015. Nonetheless, even assuming permanence was not reached, Miller's conduct did not occur with reasonable frequency thereafter.

### b.   Frequency

To be considered a continuing violation, unlawful conduct must also occur with reasonable frequency. *Richards*, 26 Cal. 4th at 823.[6] Plaintiff again relies on the *Morgan* illustration of a 301-day gap to support her position, yet she cites to no case in which a court has applied the continuing violation doctrine to FEHA claims of conduct with such a large gap in time.[7] (*See* Doc. 36 at 4.) At the least, the gap between Miller's conduct in 2015 and his conduct in 2019 is 1,100 days.[8] This gap is too far attenuated to be considered reasonably frequent. Many courts have held the same when faced with smaller gaps. *See, e.g.*, *Phillips-Kerley v. Porterville of Fresno*, 2021 WL 1966387, at *6 (E.D. Cal.

---

[6] City Defendants argue that the continuing violation doctrine requires an "ongoing, continuous pattern of misconduct." (Doc. 32-1 at 8.) However, they concede that the 3-part *Richards* test applies in making this determination, including that the unlawful actions must occur with "reasonable frequency." (*See id.*; Doc. 39 at 5.)

[7] Also, as discussed, this illustration is distinct from the circumstances here, where an intervention occurred.

[8] Plaintiff does not allege the date of her initial resignation, the date of her return, or the date in 2019 when Miller resumed his conduct. She does, however, refer to the period when she was not employed as a "one-month break." (Doc. 36 at 5.) Thus, this calculation is based on the assumption that Miller's 2015 conduct occurred on November 30, 2015 and resumed on the earliest date in 2019: January 1.

May 17, 2021) (finding no continuing violation where there was a three-year lapse in conduct); *McKenney*, 2013 WL 12057488, at *2 (finding three-year gap not "reasonably frequent"); *Rayburn v. United Airlines Inc.,* 2021 WL 8893645, at *3 (C.D. Cal. July 2, 2021) (noting that for two-year gap, "[c]ourts have held that this length of time between incidents defeats allegations of a series of continuing violations").

Based on a lack of reasonable frequency, the continuing violations doctrine does not apply to preserve time-barred allegations of Miller's conduct prior to January 1, 2019. To the extent these allegations form the basis for Plaintiff's claim against Miller, this claim is dismissed.

### 3.    Azevedo

Plaintiff also asserts a claim for sexual harassment in violation of the FEHA against Azevedo. (Doc. 30 at ¶¶ 65-68.) Like Miller, allegations of Azevedo's conduct occurring on or after January 1, 2019 are not time-barred. Thus, the remaining allegations are those concerning conduct that took place in 2017. (*See id*. at ¶¶ 41-42.) City Defendants argue that Azevedo's alleged conduct was not reasonably frequent and that it had acquired a degree of permanence. (Doc. 32 at 9.)

#### a.    Permanence

Neither party offers argument to support their respective positions as to the permanence of Azevedo's conduct. (*See* Doc. 32-1 at 9; Doc. 36.) More importantly, Plaintiff's prior resignation in 2015 pre-dates Azevedo's alleged conduct and the Court finds no other indication that his conduct reached a degree of permanence. As such, the Court finds that Azevedo's conduct did not reach a degree of permanence.

#### b.    Frequency

Azevedo's alleged conduct resumed upon Plaintiff's return from her reservist duty in December 2017. (Doc. 30 at ¶ 42.) The next allegation pertains to Azevedo's conduct in February 2019. (*Id*. at ¶ 43.) It is not clear which conduct allegedly occurred in December 2017 and which, if any, occurred in 2018. However, Plaintiff alleges that upon her return, Azevedo "*again began asking* Plaintiff to hang out with him. He *would also* ask Plaintiff if she'd be interested in a guy like him." (*Id*. at ¶ 42, emphasis added.) In drawing all reasonable inferences in Plaintiff's favor, the Court does not read this conduct to be confined to December 2017. Nonetheless, even if Azevedo's conduct

ceased in December 2017 and began again in February 2019, this amounts to a lapse of just over a year. Unlike for *Miller* and other cases the Court cites, this gap is not substantial. *See, e.g., Phillips-Kerley*, 2021 WL 1966387, at *6 (three years); *McKenney*, 2013 WL 12057488, at *2 (three years); *Rayburn*, 2021 WL 8893645, at *3 (two years). Accordingly, the Court finds that Azevedo's alleged conduct occurred with reasonable frequency.

### c.     Similarity

Though neither party addresses the "sufficient similarity" prong, *Richards* makes clear that it is not to be taken "literally." *Fahnestock*, 2014 WL 12572917, at *7 (quoting *Birschtein v. New United Motor Mfg., Inc.*, 92 Cal. App. 4th 994, 1005 (2001)). The *Richards* court utilized the conduct at issue in its case—acts of harassment and failures to reasonably accommodate disability—to exemplify that "similar kinds of unlawful employer conduct . . . may take a number of different forms." *Richards*, 26 Cal. 4th at 823. In *Birschtein*, plaintiff was subjected to sexual harassment by a coworker, including sexual advances and inappropriate comments about sexual fantasies involving plaintiff. *Birschtein*, 92 Cal. App. 4th at 997-98. Plaintiff subsequently complained to management, at which point her coworker never spoke to her again and instead began continuously staring at plaintiff. *Id*. at 998. The court explained that these overt acts "were later transmuted by plaintiff's reaction (her complaints to management about the offensive conduct) into an allegedly daily series of *retaliatory* acts—the prolonged campaign of staring at plaintiff—acts that were directly related to, indeed assertedly *grew out of,* the antecedent unlawful harassment." *Id*. at 1002 (emphasis in original).

The factual allegations are analogous here.[9] Azevedo made sexual advances toward Plaintiff with reasonable frequency between 2017 and February 2019. (Doc. 30 at ¶¶ 41-43.) Plaintiff reacted to Azevedo's last advance by denying him once more and commenting that his pending divorce was likely due to his "hitting on other women." (*Id*. at ¶ 43.) As Plaintiff alleges, "from that point forward," Azevedo began a campaign of retaliation against her. (*See id*. at ¶¶ 43-54.) Given the immediate switch to retaliation, the Court also finds Azevedo's retaliatory conduct to be "directly

---

[9] The only notable distinction between the facts of this case and those of *Birschtein* is that the reaction marking the shift from harassment to retaliation in *Birschtein* was a complaint to management as opposed to a sharp rejection. Despite this, the Court finds *Birschtein* instructive, particularly considering Azevedo's position as not merely Plaintiff's coworker, but as a Lieutenant.

related" to the harassment that preceded it.[10] The only event connecting Azevedo's sexual advances to his adverse and retaliatory conduct was Plaintiff's "reaction." Accordingly, the Court finds that the alleged conduct occurring before January 1, 2019 is sufficiently similar to the conduct thereafter. Coupled with a finding of reasonable frequency and lack of permanence, the continuing violation doctrine applies to preserve allegations of Azevedo's conduct. Thus, these allegations are not time-barred and as to Azevedo, City Defendants' motion is denied.

### 3. Porterville

Plaintiff asserts claims against Porterville for discrimination and retaliation under Title VII and claims for harassment, discrimination, retaliation, and failure to prevent under FEHA. (Doc. 30 at ¶¶ 57-80.)

#### a. Title VII claims

Under Title VII, an EEOC charge must be filed within 180 or 300 days of the alleged unlawful practice. 42 U.S.C. § 2000e-5(e)(1). All other allegations are time-barred, with the limited exception of the continuing violation doctrine as to certain claims.[11]

City Defendants argue that for Title VII claims, "[e]ach discrete discriminatory or retaliatory act is a separate unlawful employment practice for purposes of the limitations period." (Doc. 32-1 at 7.) Relying on *Morgan*, City Defendants conclude that all the alleged acts were "discrete." They argue that Plaintiff "attempts to tie together a decade of alleged misconduct involving dissimilar actors and conduct." (*Id.*) Plaintiff argues that *Morgan* distinguished discrete acts from those creating a "hostile work environment" claim, such as the one she brings which she bases on the combined effect of harassment, discrimination, and retaliation she suffered. (Doc. 36 at 3-4.) Both parties' arguments

---

[10] Though there are allegations that suggest the retaliation was due in part to Plaintiff's injuries (*see* Doc. 30 at ¶¶ 46, 51, 54), this does not change the Court's finding that there was a direct relation between Azevedo's alleged sexual harassment and his retaliation.

[11] City Defendants argue that Plaintiff alleges conduct outside of the limitations period under Title VII, and as a result, failed to exhaust her administrative remedies. (*See* Doc. 32-1 at 7.) However, both City Defendants' arguments and Plaintiff's response are limited to the continuing violation doctrine as an *exception* to the statute of limitations, rather than whether—and which—alleged conduct occurred within the limitations period. (*See id.*; Doc. 36 at 3-4.) Nonetheless, based upon Plaintiff's October 9, 2020 filing date and no indication that Plaintiff initiated proceedings with a state or local agency, the Court calculates that the Title VII limitations period began in April 2020.

miss the mark because they fail to acknowledge the differing standards for Title VII claims and FEHA claims. The California Supreme Court clarified the distinction:

> [T]he [*Morgan*] court held that, with regard to the applicability of the continuing violation doctrine, a distinction should be drawn between discrimination and retaliation claims on the one hand, and hostile work environment claims on the other hand. The court in *Morgan* reasoned that because *Title VII's* definition of "unlawful employment practices" includes many discrete acts but does not indicate that term "practice" converts related discrete acts into a single unlawful practice for timely filing purposes, discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges. The court further stated that hostile work environment claims, by contrast, by their very nature involve repeated conduct and thus cannot be said to occur on any particular day. Because a harassment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice," the court in *Morgan* concluded that it does not matter that some of the component parts fall outside the statutory time period.

*Yanowitz*, 36 Cal. 4th at 1057 (internal citations omitted) (emphasis added). Thus, under Title VII, the continuing violation doctrine's application is limited to hostile work environment claims. *Morgan*, 536 U.S. at 115.

On the other hand, the *Yanowitz* court declined to extend *Morgan*'s reasoning to state claims under FEHA. The court held that in addition to hostile work environment claims, the doctrine may apply to discrimination and retaliation claims where there is an alleged continuing course of conduct. *Yanowitz*, 36 Cal. 4th at 1057-59 (cited with approval in *Leland v. Porterville & County of San Francisco*, 576 F. Supp. 2d 1079, 1093 (N.D. Cal. 2008)). In applying the doctrine to plaintiff's retaliation claim, the court highlighted *Richards*' express application of the doctrine to FEHA discrimination *and* harassment claims. *Id.* In short, Plaintiff does not assert a Title VII hostile work environment claim. Accordingly, as to Plaintiff's claims against Porterville for discrimination and retaliation under Title VII *only*, the continuing violation doctrine does not apply. All allegations of conduct occurring before the applicable limitations period under 42 U.S.C. section 2000e-5(e)(1)— April 2020—are time-barred and to the extent Plaintiff relies on these allegations in asserting her Title VII claims, the claims are dismissed. Remaining for the Court's examination are Plaintiff's FEHA claims against Porterville.

### b.    FEHA claims

Plaintiff asserts claims against Porterville for harassment, discrimination, retaliation, and

failure to prevent this conduct under FEHA. (Doc. 30 at ¶¶ 65-80.)[12]

### i.    Retaliation and failure to prevent

Plaintiff alleges that Porterville retaliated against her "because she opposed and reported the discrimination and harassment to which she and her female co-workers were being subjected." (Doc. 30 at ¶ 75.) Similarly, Plaintiff asserts that Porterville failed to take reasonable steps necessary to prevent the sexual harassment that Plaintiff reported. (*Id.* at ¶¶ 78-79.) Plaintiff reported the sexual harassment in 2019. (*See id.* at ¶ 24.) As such, there are no time-barred allegations supporting Plaintiff's retaliation or failure to prevent claims against Porterville. For these claims, City Defendants' motion is denied.

### ii.    Harassment

Plaintiff asserts that Benas, Miller, and Azevedo sexually harassed her, and that Porterville is "strictly liable for their conduct because they were supervisors during periods they sexually harassed Plaintiff and because [Porterville] was aware of their sexual harassment of Plaintiff and failed to take appropriate steps to investigate and remedy their sexual harassment of Plaintiff." (Doc. 30 at ¶ 67.) Plaintiff alleges that Benas sexually harassed her from 2011 to 2015, and from 2019[13] to 2020 (*see id.* at ¶¶ 19-28), Miller sexually harassed her in 2015 and 2019 (*id.* at ¶¶ 29-30), and Azevedo sexually harassed her from 2017 to 2019. (*Id.* at ¶¶ 41-43.)

FEHA imposes strict liability on employers for all acts of harassment by a supervisor. *State Dep't of Health Servs. v. Superior Ct.*, 31 Cal. 4th 1026, 1042 (2003); *see also Bernhardt v. State of California Dep't of Corr. & Rehab.*, 2015 WL 2003096, at *12 (E.D. Cal. Apr. 29, 2015) (noting that the "California Supreme Court [in *State*] interprets the FEHA to impose strict liability on employers whose employee-supervisors sexually harass subordinates."). Neither party disputes the supervisory

---

[12] City Defendants argue that each "alleged wrongdoer" should be evaluated separately but fail themselves to do so. (*See* Doc. 32-1 at 9.) Instead, City Defendants make general arguments as to the entirety of Plaintiff's allegations in arguing that the continuing violations doctrine does not apply. (*See id.* at 8-9.) Perhaps equally erroneous, Plaintiff asserts that "the entire time period of the hostile work environment created by the discrimination, harassment and retaliation" may be considered in determining liability. (Doc. 36 at 4.) Instead, for each type of claim, the Court will determine whether Plaintiff may rely on alleged conduct occurring before January 1, 2019.

[13] As discussed above, allegations of Benas' conduct between his return in December 2018 and January 1, 2019 are time-barred. Thus, the Court will not address the conduct during this period.

18

1    role of Benas, Miller, or Azevedo. Thus, the Court turns to the allegations of sexual harassment.

2          Both Miller's and Benas' alleged conduct ceased in 2015 when Plaintiff resigned. (*See* Doc. 30

3    at ¶¶ 22, 29-30.) According to Plaintiff, she was next subjected to sexual harassment by Azevedo in

4    2017. (*Id*. at ¶ 41.) For the same reason as above, this two-year gap defeats a finding of reasonable

5    frequency. *Rayburn,* 2021 WL 8893645, at *3. However, because Azevedo's misconduct began as

6    early as 2017 and it persisted sufficiently to constitute a continuing violation, as discussed above, any

7    allegations after 2017 fall within the statute of limitations. Thus, Plaintiff may rely on Azevedo's

8    conduct beginning in 2017 to support her FEHA harassment claim against Porterville, through strict

9    liability. Accordingly, to the extent Plaintiff relies on allegations of Azevedo's sexual harassment

10   before 2017 to support her FEHA harassment claim against Porterville, these allegations are

11   dismissed. The allegations of conduct occurring on or after Azevedo's alleged conduct beginning in

12   2017 are not time-barred, and therefore, Plaintiff may maintain her claim against Porterville on these

13   allegations.

14                              *iii.    Discrimination*

15         Plaintiff alleges that Porterville discriminated against her "based on her sex and sexual

16   orientation." (Doc. 30 at ¶ 71.) As previously stated, allegations of conduct occurring prior to

17   Azevedo's conduct in 2017 are time-barred and Plaintiff's claim is dismissed to the extent she relies

18   upon them to state her claim for FEHA discrimination against Porterville.[14] All subsequent allegations

19   pertain to conduct occurring on or after January 1, 2019 and are not time-barred.

20         **C.    Background evidence**

21         Plaintiff asserts that even untimely allegations concerning Defendants' conduct may be used as

22   background evidence to establish Defendants' "pattern and practice" of harassing Plaintiff and her

23   female co-workers, as well as the Department's "failure to prevent and to take immediate and

24   appropriate corrective action concerning" the sexual harassment. (Doc. 35 at 2; Doc. 36 at 6.) Benas

25

26

27

     ───────────────

28   [14] This includes Plaintiff's allegations of conduct by Lieutenant Standridge, whom Plaintiff asserts harassed and
     discriminated against her in 2011. (Doc. 30 at ¶ 34.)

clarifies that Plaintiff does not assert a "pattern and practice" claim against him[15] and allegations of conduct outside the statutory period "cannot be used as evidence for liability purposes." (Doc. 38 at 3.) More apt is City Defendants' contention that Plaintiff "misconstrues" the use of background evidence because Plaintiff's argument is an "admissibility of evidence argument, not an argument that supports including time-barred allegations in the SAC." (Doc. 39 at 6.) The Court agrees.

It is not clear whether Plaintiff attempts to include untimely allegations in her SAC to establish Defendants' liability or to use it as evidence of Defendants' conduct to support her timely claims. As to the former, Plaintiff offers no meaningful argument that her claim may rely upon time-barred allegations in a complaint to determine liability. (*See* Doc. 35 at 2; Doc. 36 at 6.) As to the latter, the question of the admissibility of evidence in proving liability is neither an issue at this stage nor does it provide a basis for the inclusion of untimely allegations in a *complaint*.

Past conduct or acts may be used in combination with evidence of current conduct, to prove intent or as evidence of pretext. *Lyons v. England*, 307 F.3d 1092, 1110-11 (9th Cir. 2002) (emphasis added); *see also Bagley v. Bel-Aire Mech. Inc.*, 647 F. App'x 797, 800 (9th Cir. 2016) ("Evidence of time-barred acts may be 'offered for its probative value in assessing whether the employer's justifications for its present conduct lack credibility' and may also serve 'as indirect proof of the employer's intent to discriminate.") (quoting *Lyons*). However, time-barred acts cannot be relied upon to determine liability. *See Lyons*, 307 F.3d at 1111 n.12 (explaining that courts may admit evidence of a discrete act outside the limitations period "not for the purpose of extending liability, but as relevant

---

[15] Although Benas notes that Plaintiff does not bring a "pattern and practice" claim, he nevertheless relies on class actions involving "pattern and practice" theories in furthering his argument that "pattern and practice" evidence cannot be used by an individual plaintiff against an individual defendant. (*See* Doc. 38 at 3, citing *Herrera v. Serv. Emps. Int'l Union Loc. 87*, 2013 WL 12324535, at *5 (N.D. Cal. Sept. 13, 2013); *Mansourian v. Bd. of Regents of Univ. of Cal. at Davis*, 2007 WL 3046034, at *8 (E.D. Cal. Oct. 18, 2007), *rev'd in part sub nom. Mansourian v. Regents of University of California*, 594 F.3d 1095 (9th Cir. 2010), *opinion amended and superseded on denial of reh'g*, 602 F.3d 957 (9th Cir. 2010).) Plaintiff does not advance her claim based on a "pattern and practice" theory. *See Herrera*, 2013 WL 12324535, at *4 ("[A] pattern or practice theory of discrimination is advanced by the government or in a private class action demonstrating [that] the existence of a discriminatory pattern or practice establish[s] a presumption that the individual class members had been discriminated against on account of race." (internal quotation marks omitted)). For this very reason, the Court declines to address Benas' argument in this regard. For what it is worth, however, it is questionable to the Court whether the background evidence rule applies to individual defendants. None of the examined cases have applied this rule to non-employer defendants nor expressly precluded its application. *See, e.g.*, *Lyons v. England*, 307 F.3d 1092 (9th Cir. 2002); *Bagley v. Bel-Aire Mech. Inc.*, 647 F. App'x 797 (9th Cir. 2016). Thus, the Court will, for argument's sake, assume that the rule applies to individual defendants. That is because to do so does not save Plaintiff's allegations.

1  evidence of the employer's present discriminatory intent"); *see also Soga v. Kleinhans*, 2016 WL

2  4192411, at *9 (E.D. Cal. Aug. 9, 2016) (explaining that while time-barred prior acts were not

3  actionable under the FEHA, they could provide background evidence to support a timely claim);

4  *Leland*, 576 F. Supp. 2d at 1093 n.4 ("time-barred acts may not form the basis for liability"). The

5  California Supreme Court in *Richards* distinguished evidence and liability:

6  > The first question is evidentiary: are the alleged acts outside the limitation period
7  > admissible as relevant background evidence? (See *United Air Lines v. Evans* (1977)
8  > 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571.) The second and more difficult
   > question is remedial: is an employer liable for actions that take place outside the
   > limitations period if these actions are sufficiently linked to unlawful conduct within
   > the limitations period?

9

10  *Richards*, 26 Cal. 4th at 812. Therefore, subject to the Federal Rules of Evidence, this conduct may be

11  admissible as evidence to support a potentially viable claim at a more appropriate stage of litigation,

12  but that time is not now. *Lyons*, 307 F.3d at 1110-11; *see also Oreizi*, 2021 WL 3883659, at *6

13  (addressing the background evidence admissibility issue in a pre-trial motion *in limine* order).

14  Accordingly, *only* to the extent Plaintiff's claims are based on time-barred allegations, these claims are

15  dismissed.

16  **IV.    Leave to Amend**

17          Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend "shall be freely

18  given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate

19  decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122,

20  1127 (9th Cir. 2000) (alterations, internal quotation marks omitted). In deciding whether leave to

21  amend should be granted, courts consider "(1) bad faith; (2) undue delay; (3) prejudice to the opposing

22  party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint."

23  *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). Plaintiff requests leave to amend her complaint.

24  (Docs. 35, 36.) However, she does not address any of the factors to aid the Court in making its

25  decision and the Court has previously granted Plaintiff leave to amend. (Doc. 29.) Most importantly,

26  Plaintiff does not assert that she seeks leave to amend for purposes of curing factual deficiencies, but

27  rather, to assert additional claims. (*See* Doc. 35 at 4; Doc. 36 at 7.) Accordingly, leave to amend is

28  **DENIED** without prejudice. *See Chinatown Neighborhood Ass'n v. Harris*, 33 F. Supp. 3d 1085, 1093

(N.D. Cal. 2014), *aff'd*, 794 F.3d 1136 (9th Cir. 2015) ("If a motion to dismiss is granted, a court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts."). Plaintiff is not precluded from raising this issue in a proper motion for leave to amend.

**V.      Conclusion and Order**

Based upon the foregoing, the Court **ORDERS**:

1.      Defendant Benas' motion to dismiss (Doc. 31) is **GRANTED IN PART** and **DENIED IN PART**. The sexual harassment claim brought under FEHA will be allowed to proceed only as to events occurring on or after January 1, 2019.

2.      Defendants Porterville, Miller, and Azevedo's motion to dismiss (Doc. 32) is **GRANTED IN PART** and **DENIED IN PART** as follows:

a.      The sexual harassment claim against Miller brought under FEHA will be allowed to proceed only as to events occurring on or after January 1, 2019.

b.      The motion as to the sexual harassment claim against Azevedo brought under FEHA is **DENIED**.

c.      The claims for discrimination and retaliation brought against Porterville under Title VII will be allowed to proceed only as to events occurring on or after April 2020.

d.      The motion is **DENIED** as to Plaintiff's retaliation and failure to prevent sexual harassment claims based on FEHA against Porterville. The sexual harassment and discrimination claims against Porterville based on FEHA will be allowed to proceed only as to conduct occurring after the commencement of Azevedo's conduct in 2017.

IT IS SO ORDERED.

Dated:   **October 24, 2022**

UNITED STATES DISTRICT JUDGE

22