1  Jesse J. Maddox, Bar No. 219091
   jmaddox@lcwlegal.com
2  Abigail W. Clark, Bar No. 304512
   aclark@lcwlegal.com
3  Sue Ann Renfro, Bar No. 143122
   srenfro@lcwlegal.com
4  LIEBERT CASSIDY WHITMORE
   A Professional Law Corporation
5  5250 North Palm Ave, Suite 310
   Fresno, California 93704
6  Telephone:    559.256.7800
   Facsimile:    559.449.4535
7
8  Attorneys for Defendants CITY OF PORTERVILLE, GARY
   MILLER, and MARK AZEVEDO

9

10                  UNITED STATES DISTRICT COURT

11            EASTERN DISTRICT OF CALIFORNIA - FRESNO

| | |
|---|---|
| 12  AMBER MORENO, | Case No.:  1:21-cv-00865-JLT-BAM |
| 13                    Plaintiff, | Complaint Filed: May 27, 2021 |
| 14       v. | FAC Filed: October 18, 2021<br>SAC Filed: November 26, 2021 |
| 15  CITY OF PORTERVILLE, MICHAEL<br>BENAS, GARY MILLER, and MARK | **DEFENDANTS CITY OF PORTERVILLE,**<br>**GARY MILLER, AND MARK AZEVEDO'S** |
| 16  AZEVEDO, | **NOTICE OF MOTION AND MOTION FOR**<br>**PARTIAL SUMMARY JUDGMENT;** |
| 17                    Defendants. | **MEMORANDUM OF POINTS AND**<br>**AUTHORITIES IN SUPPORT THEREOF** |
| 18 | |
| 19 | *[Filed concurrently with Separate Statement of*<br>*Undisputed Material Facts, Appendix of Evidence,*<br>*Request for Judicial Notice, and [Proposed]Order]* |
| 20 | |
| 21 | Date:        May 7, 2024<br>Time:        9:00 a.m. |
| 22 | Courtroom: 4<br>Judge:       Hon. Jennifer L. Thurston |

23

24       **TO THE COURT, PLAINTIFF, AND HER ATTORNEYS OF RECORD:**

25       **PLEASE TAKE NOTICE** that on May 7, 2024 at 9:00 a.m., or as soon thereafter as the

26  matter may be heard, in the court room of the Honorable Jennifer L. Thurston, Courtroom 4 of the

27  above-entitled Court, located at Robert E. Coyle United States Courthouse, 2500 Tulare Street,

28  Fresno, California 93721.

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

Defendants CITY OF PORTERVILLE, GARY MILLER, and MARK AZEVEDO ("Defendants")[1] will move this Court for an order granting partial summary judgment of issues pursuant to Rule 56 of the Federal Rules of Civil Procedure, and United States District Court for the Eastern District of California Local Rule 260, in their favor and against Plaintiff Amber Moreno, as stated in the Statement of Issues below (the "Motion"). Defendants certify pursuant to this Court's Standing Order, dated January 25, 2022 (Dkt. No. 37), that meet and confer efforts have been exhausted and that all substantive issues that Defendants present to the Court for resolution require resolution by the Court, as detailed in Defendants' Appendix of Evidence in Support of the Motion ("Appendix"), **Exhibit B** (Declaration of Sue Renfro) and **Exhibit H** (Declaration of Abigail Clark).

The operative Second Amended Complaint ("SAC") alleges the following six claims under the Fair Employment and Housing Act ("FEHA") and Title VII of the 1964 Civil Rights Act (42 U.S.C. § 2000e et seq.) ("Title VII"), including:

1. Sex Discrimination in violation of Title VII, against the City;

2. Retaliation in violation of Title VII, against the City;

3. Sex Harassment in violation of FEHA, Cal. Gov. Code § 12940(j), against Defendants Benas, Miller, Azevedo and the City;

4. Sex Discrimination in violation of FEHA, Cal. Gov. Code § 12940(a), against the City;

5. Retaliation in violation of FEHA, Cal. Gov. Code § 12940(h), against the City; and

6. Failure to Prevent Sexual Harassment, in violation of FEHA, Cal. Gov. Code § 12940(k), against the City.

Defendant City of Porterville ("City") moves for partial summary judgment on Plaintiff's first, second, fourth, and fifth claims.

/ / /

/ / /

---

[1] Defendant Michael Benas is represented by separate counsel and is not a moving party for this motion.

**STATEMENT OF ISSUES TO BE DECIDED**

This motion for partial summary judgment is made on the following grounds:

1. Plaintiff's First Cause of Action for sex discrimination under Title VII fails because Plaintiff cannot establish one or more elements of her claim, in particular, that she was subjected to an adverse employment action, or that her sex was a substantial motivating reason for any employment decision by the City.

2. Plaintiff's First Cause of Action for sex discrimination under Title VII fails because the City had legitimate, non-discriminatory reasons for its employment actions, which Plaintiff cannot prove were pretext for discrimination.

3. Plaintiff's Second Cause of Action for retaliation in violation of Title VII fails because Plaintiff cannot establish one or more elements of her claim, namely, that Plaintiff was subjected to an adverse employment action or that any alleged adverse employment action is causally connected to her protected activity.

4. Plaintiff's Second Cause of Action for retaliation in violation of Title VII fails because the City had legitimate, non-retaliatory reasons for its employment actions, which Plaintiff cannot prove were a pretext for retaliation.

5. Plaintiff's Fourth Cause of Action for sex discrimination in violation of FEHA fails because Plaintiff cannot establish one or more elements of her claim, in particular, that she was subjected to an adverse employment action, or that her sex was a substantial motivating reason for any employment decision by the City.

6. Plaintiff's Fourth Cause of Action for sex discrimination in violation of FEHA fails because the City had legitimate, non-discriminatory reasons for its employment actions, which Plaintiff cannot prove were pretext for discrimination.

7. Plaintiff's Fifth Cause of Action for retaliation in violation of FEHA fails because Plaintiff cannot establish one or more elements of her claim, namely, that Plaintiff was subjected to an adverse employment action or that any alleged adverse employment action is causally connected to her protected activity.

8. Plaintiff's Fifth Cause of Action for retaliation in violation of FEHA fails because the

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

City had legitimate, non-retaliatory reasons for its employment actions, which Plaintiff cannot prove were a pretext for retaliation.

Dated:  April 1, 2024

Respectfully submitted,

LIEBERT CASSIDY WHITMORE

By:   */s/ Abigail W. Clark*
          Jesse J. Maddox
          Abigail W. Clark
          Sue Ann Renfro
          Attorneys for Defendants CITY OF
          PORTERVILLE, GARY MILLER,
          and MARK AZEVEDO

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

12321388.9 PO090-035

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................9

II.   THE COURT'S ORDER ON DEFENDANTS' MOTIONS TO DISMISS ...................10

III.  STATEMENT OF FACTS ........................................................................10

     A.    PLAINTIFF RESIGNS FROM PORTERVILLE PD IN 2015, BUT RETURNS TO "HER FAMILY" WITHIN TWO MONTHS ...........................10

     B.    PLAINTIFF'S SPECIAL ASSIGNMENTS AND RESIGNATIONS ...........................11

     C.    PLAINTIFF'S HARASSMENT ALLEGATIONS .................................12

     D.    PLAINTIFF'S ALLEGED PROTECTED ACTIVITIES .....................................12

     E.    THE ALLEGED DISCRIMINATORY OR RETALIATORY EVENTS ...............13

         1.    Plaintiff was Denied Detective Assignments ...........................13

         2.    Plaintiff Receives Personnel Incident Report ...........................13

         3.    Department Requires a Resignation Letter for FTO Resignation ............................14

         4.    Plaintiff's Claims against Sergeant Miller Regarding Denied and/or Cancelled Vacation Requests, and Gender Biased Write-Ups .......................14

         5.    Plaintiff Claims Lieutenant Standridge Denied Transfer Request ................................14

         6.    Chief Kroutil Did Not Select Plaintiff for Sergeant Positions ...................15

         7.    Chief Kroutil Did Not Select Plaintiff for Corporal Assignments ...............................15

         8.    Plaintiff's 2018-2019 Performance Evaluation .........................16

         9.    Lieutenant Standridge Confirms Dates of Plaintiff's Military Leave ......................16

         10.   Plaintiff is Directed to Use Vacation, Not Bereavement Leave ..........................17

         11.   Plaintiff Claims Lieutenant Azevedo Holds Her Reports for Review ............................17

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

Defendants' Notice of Partial MSJ; MPA in Support Thereof; 1:21-cv-00865-JLT-BAM

12321388.9 PO090-035

12. Lieutenant Azevedo Verbally Counsels Plaintiff ...................................17

13. Plaintiff Claims She Was Denied Overtime at a Structure Fire ................................................................................................................18

14. Plaintiff Claims She Was Denied Leave to Attend Funeral ....................18

15. Captain Castellow Did Not Assign Plaintiff to Work San Francisco Riots...........................................................................................18

16. Sergeant Martinez Calls Plaintiff an Hour Before Her Shift Begins ....................................................................................................19

17. Sergeant Ward Calls Plaintiff for Scheduled Range Training ................19

18. Plaintiff's NCSU Assignment Ends After One Year ...............................19

19. SWAT Team Physical Diagnostic Test ...................................................19

20. Plaintiff Claims Lieutenant Standridge Denied Her Sick Leave .......................................................................................................20

21. Plaintiff Claims Lieutenant Standridge Engaged in Gender-Biased GPS Monitoring ...........................................................................20

22. Plaintiff Claims Lieutenant Standridge Conducted Biased Vehicle Inspections...............................................................................21

23. Attempted Write-Ups and Unjustifiable Criticism .................................21

F. PLAINTIFF'S 2020 RESIGNATION ....................................................21

IV. LEGAL STANDARD FOR SUMMARY JUDGMENT.........................................21

V. LEGAL ARGUMENT ..............................................................................................22

A. THERE IS NO TRIABLE ISSUE AS TO PLAINTIFF'S DISCRIMINATION AND RETALIATION CLAIMS.............................22

1. Legal Standards for Plaintiff's Discrimination and Retaliation Claims....................................................................................22

2. Plaintiff Cannot Establish a Prima Facie Case .........................23

3. The City Has Demonstrated Legitimate Business Reasons ....................30

4. Plaintiff Cannot Demonstrate Pretext ........................................30

B. PLAINTIFF WAS NOT CONSTRUCTIVELY DISCHARGED ......................30

VI. CONCLUSION...........................................................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adetuyi v. City and County of San Francisco,*
    63 F. Supp. 3d 1073, (N.D. Cal. 2014) .......................................................................... 21, 23

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 ................................................................................................................... 21, 22

*Andrade v. Arby's Restaurant Group, Inc.,*
    225 F.Supp.3d 1115 (N.D. Cal. 2016). ......................................................................... 21, 23

*Burlington N. & Santa Fe Ry. Co. v. White,*
    548 U.S. 53 (2006) .............................................................................................................. 25

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ........................................................................................................... 21

*Clark County School Dist. v. Breeden*
    532 U.S. 268 (2001) ........................................................................................................... 28

*Cozzi v. County of Marin,*
    787 F. Supp. 2d 1047 (N.D. Cal. 2011) ............................................................................ 25

*Fairbank v. Johnson,*
    212 F.3d 528 (9th Cir. 2000). ........................................................................................... 22

*Gilbrook v. City of Westminster,*
    177 F.3d 839 (9th Cir. 1999) ............................................................................................ 27

*Harkless v. Pac. Power & Light,*
    2021 U.S. Dist. LEXIS 163774, (E.D. Cal. 2021) ........................................................... 31

*Hittle v. City of Stockton,*
    76 F. 4th 877 (9th Cir. 2023) ............................................................................................ 22

*Kraus v. Presidio Trust Facilities Division/Residential Management Branch,*
    704 F. Supp. 2d 859 (N.D. Cal. 2010) .............................................................................. 24

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1973) ........................................................................................................... 22

*Murphy v. Kern,*
    2020 WL 8510343 (C.D. Cal. 2020) ................................................................................ 24

*Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.,*
    210 F.3d 1099 (9th Cir. 2000) .......................................................................................... 22

*Payne v. Norwest Corp.,*
    113 F. 3d 1079 (9th Cir. 1997) ......................................................................................... 22

12321388.9 PO090-035

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

*Poland v. Chertoff,*
    494 F. 3d 1174 (9th Cir. 2007) ............................................................................ 27

*Reeves v. Sanderson Plumbing Products, Inc.,*
    530 U.S. 133 (2000) ............................................................................................ 30

*Reynaga v. Roseburg Forest Prods.,*
    847 F.3d 678 (9th Cir. 2017) ............................................................................. 23

*Rosas v. Town of Windsor,*
    2005 WL 2999500 (N.D. Cal. 2005) ................................................................ 23

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,*
    809 F.2d 626 (9th Cir. 1987) ............................................................................. 22

**State Cases**

*Brown v. Los Angeles Unified School Dist.,*
    60 Cal. App. 5th 1092 (Cal. Ct. App. 2021) ..................................................... 23

*Cloud v. Casey,*
    76 Cal. App. 4th 895 (Cal. Ct. App. 1999) ....................................................... 30

*Guz v. Bechtel National Inc.,*
    24 Cal.4th 317 (2000) ........................................................................................ 22

*Horn v. Cushman & Wakefield Western,*
    72 Cal. App. 4th 798 (1999) .............................................................................. 23

*Hussain v. Regents of the Univ. of Cal.,*
    2018 Cal. Super. LEXIS 54953 (Cal. Sup. Ct. Jan. 29, 2018).......................... 24

*Loggins v. Kaiser Permanente Internat.,*
    151 Cal.App.4th 1102 (2007) ........................................................................... 29

*Martin v. Lockheed Missiles & Space Co.,*
    29 Cal. App. 4th 1718 (1994) ........................................................................... 23

*Simers v. Los Angeles Times Communs. LLC,*
    18 Cal. App. 5th 1248 (Cal. Ct. App. 2018) ..................................................... 31

*Turner v. Anheuser-Busch, Inc.,*
    7 Cal. 4th 1238 (1994) ...................................................................................... 31

*Yanowitz v. L'Oreal USA, Inc.,*
    36 Cal. 4th 1028 (2005). .................................................................................... 23

**Federal Rules**

Federal Rule of Civil Procedure 56(c) ..................................................................... 22

Defendants' Notice of Partial MSJ; MPA in Support Thereof; 1:21-cv-00865-JLT-BAM

12321388.9 PO090-035

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiff Amber Moreno ("Plaintiff") had been employed by the City of Porterville Police Department as a Police Officer since 2010.  She voluntarily resigned in 2015, but eagerly returned within two months after her resignation, stating a desire to return because the Department was her home and treated her like family.  Despite her return to the Department in 2015, and despite acknowledging that she did not complain about any of the alleged conduct until 2019, Officer Moreno now claims she has been subject to discrimination, harassment, and retaliation since 2010.  She resigned from the Department again on July 6, 2020, accepting a job for which she applied in 2019.

In this motion, the City seeks judgment on Plaintiff's discrimination and retaliation claims because they lack merit.  Plaintiff was awarded at least four special assignments during her tenure at the Department.  However, she had difficulty accepting constructive feedback, quit the Field Training Officer ("FTO") program after receiving routine non-disciplinary counseling for leaving a trainee unsupervised, and operated on "Amber-time," refusing to put in the work and overtime other officers in the Department put in.  Plaintiff has admitted she was not more qualified than the candidates selected for Sergeant positions, and has no evidence that she performed better in the selection process than the candidates selected for Corporal assignments.  She is also angry about a single low attendance rating in her 2019 performance evaluation (she otherwise received 13 "Meets Standard" ratings, and 4 "Exceeds Standard" ratings) that reflects multiple supervisors' belief that, following review of Department records, Plaintiff used sick leave to extend approved time-off.

Accordingly, the City requests the Court enter partial summary judgment in its favor on Plaintiff's discrimination and retaliation causes of action for several reasons.  First, the vast majority of Plaintiff's alleged employment actions do not constitute legally cognizable adverse employment actions.  To the extent the remaining alleged employment actions constitute legally cognizable adverse actions, Plaintiff cannot demonstrate any action was causally connected to any protected status, or due to any complaints that she made.  She alleges a laundry list of actions taken

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

1  against her by at least six of her Department Command and Executive Staff supervisors, but admits

2  that most of these individuals never said anything offensive to her at all, and none of them ever

3  made offensive remarks in connection with the specific actions alleged.  Significantly, almost all

4  cognizable adverse actions alleged occurred before she complained in 2019, so they cannot form

5  the basis of a retaliation claim, and with respect to Plaintiff's Title VII claims, almost all adverse

6  action allegations are time-barred under this Court's Order on Defendants' Motion to Dismiss.

7  Even if one were to assume some of the actions alleged as discriminatory or retaliatory

8  constitute adverse employment actions and are not time barred, partial summary judgment on

9  Plaintiff's discrimination and retaliation claims is appropriate because the City had legitimate, non-

10  discriminatory reasons for its actions, and Plaintiff cannot show pretext.

11  **II.      THE COURT'S ORDER ON DEFENDANTS' MOTIONS TO DISMISS**

12  The City, Gary Miller, and Mark Azevedo (the "Defendants"), and Defendant Benas

13  (separately represented), each filed a Motion to Dismiss Plaintiff's Second Amended Complaint on

14  December 27, 2021. (Dkt. Nos. 31, 21.)  This Court ruled on these Motions on October 24, 2022.

15  (Hereinafter, the "Order," Dkt. No. 45.)  With respect to Plaintiff's Title VII discrimination and

16  retaliation claims (First and Second Causes of Action), the Court concluded that claims based on

17  conduct that occurred before the applicable statutory limitation cutoff of **April 2020**, are time

18  barred.  (Order, 17: 21-25.)

19  With respect to Plaintiff's FEHA Retaliation Claim (Fifth Cause of Action), the Court

20  concluded there were no time-barred allegations supporting Plaintiff's retaliation claim because

21  Plaintiff alleged she reported sexual harassment in 2019.  (Order, 18:2-9 citing SAC, ¶ 24.)  With

22  respect to Plaintiff's FEHA Discrimination Claim (Fourth Cause of Action), the Court concluded

23  allegations of conduct after January 1, 2019, are not time barred (Order, 19:14-19), and as to

24  Defendant Azevedo, the Court will consider allegations back to 2017.  (Order, 19:14-19.)

25  **III.     STATEMENT OF FACTS**

26      **A.      PLAINTIFF RESIGNS FROM PORTERVILLE PD IN 2015, BUT RETURNS TO "HER FAMILY" WITHIN TWO MONTHS**

27  The Porterville Police Department hired Plaintiff in 2010.  (Separate Statement of

28

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

Undisputed Material Facts ("UMF") No. 1.) Plaintiff is a woman and lesbian. (UMF 2.) She voluntarily resigned from Porterville PD on March 21, 2015. (UMF 3.) In her resignation letter to then-Police Chief Kroutil, she wrote:

> My decision to leave the Porterville Police Department was not an easy decision for me. It was without question **the hardest decision I have had to make** for my career. I started my career here in 2010 and **I have formed friendships with all of you** that I will never forget. **Most of you are like family** to me. I hope to continue my working relationships with you in the future.

(UMF 4; emphasis added.) She left to work at the Fresno PD because they have more specialty units, because it "tops out" at more than Porterville, and she could make more money. (UMF 5.)

Plaintiff reapplied to the Porterville PD on May 18, 2015, and was reinstated. (UMF 6.) She decided to return because "Porterville was her home, and the Department was her family." (UMF 7.) Porterville PD also allowed officers to be more hands on and proactive, and she wanted to "go out there and make things happen and continue to make arrests and stuff, and [she] didn't really get to do all that" at Fresno PD. (UMF 8.)

### B. PLAINTIFF'S SPECIAL ASSIGNMENTS AND RESIGNATIONS

During Plaintiff's two periods of employment with Porterville PD, she was assigned to many coveted special assignments. For example, she moved into the Investigations Division to work as a Detective around 2012, and worked as a Detective for three years until she resigned in 2015. (UMF 9.) She also served as a Field Training Officer ("FTO") starting in 2012. (Appendix, **Exhibit 9**, Deposition of Amber Moreno ("Moreno Depo.") 80:13-19.)

Upon her return to Porterville PD in 2015, Plaintiff was assigned to the Special Weapons and Tactics ("SWAT") Team, and received a salary increase. (UMF 10.) She was also assigned to the Major Accident Investigations Team ("MAIT"), but resigned from MAIT because she was already receiving incentive pay as a SWAT team member, and the Department does not permit officers to "stack" incentive pay for these two on-call type assignments. (UMF 11.) Plaintiff was also re-assigned to work as an FTO, and received incentive pay for that assignment. (UMF 12.) However, she voluntarily resigned from her FTO assignment. (UMF 32.) In July 2019, Plaintiff was also assigned to the Neighborhood Crime Suppression Unit. (UMF 13.)

///

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

### C.    PLAINTIFF'S HARASSMENT ALLEGATIONS

Plaintiff admits she has never heard former Police Chief Erik Kroutil or current Police Chief Jake Castellow say anything that was sexist or offensive about females.  (UMF 14.)  Plaintiff does not allege that Lieutenant Richard Standridge said anything offensive to her about her gender or sexual orientation.  (UMF 15.)  Plaintiff alleges Officer Michael Benas made inappropriate sexual comments toward her and other female officers that she reported in May 2019, but not that he took any legally cognizable adverse action against her, so Benas' comments are not addressed in detail in this Motion.  (SAC, ¶¶ 23-28.)

From 2015 until September 2019, when Sergeant Miller retired, Plaintiff alleges Miller made about ten comments related to her sexual preference, including telling her that she should give a man like Miller a chance, and setting her up with his sons. (UMF 16.)  In the same period, Plaintiff asserts Miller also made offensive comments about women in general, including that "women don't belong in law enforcement," and "can't do the job the same as a man." (UMF 17.)

Plaintiff also testified that Lieutenant Azevedo asked her to hang out with him after work and/or have drinks with her between seven to ten times between 2017 and 2019 (UMF 18), sent her annoying text messages saying, "I see you. What are you doing?", and sent seven to ten texts to hang out, though she does not have copies.  (UMF 19.)  There was nothing sexual in these messages.  (UMF 21.)  Azevedo never asked Plaintiff explicitly whether she would go on a date or made any overt sexual advances.  (UMF 20.)  Plaintiff also testified that in 2017, Azevedo came into her workspace on four or five occasions and told her that if she wanted to hang out with him after work, he would get her off early.  (UMF 22.)  Plaintiff also asserts that in February 2019, Azevedo asked her to have beers with him, she told him she did not want to have beers with him that day, that "his hitting on other women was probably the reason for his divorce," and from the point she made that specific comment forward, Azevedo started retaliating against her.  (UMF 23.)  Plaintiff does not allege Azevedo asked her to hang out with him after February 2019.  (UMF 24.)

### D.    PLAINTIFF'S ALLEGED PROTECTED ACTIVITIES

The first time Plaintiff complained to anyone at the City that someone was acting inappropriately toward her based on her gender or sexual orientation was after late February or

early March 2019.  (UMF 125.)  Plaintiff asserts she made the following reports:

- Between February 2019 and May 2019, she told Cody Dean, Chris Contreras, and Marcel Morales about Benas' comments about her sexual orientation. (UMF 126.)

- Around April 2019, she told Lieutenant Richard Standridge that Miller was talking badly about women in general in the profession, and about comments Miller would make about her sexual orientation.  (UMF 127.)

- In May 2019, Plaintiff told Chief Kroutil about offensive conduct by Benas.  (UMF 119.)  She asserts she also reported offensive comments by Miller.  (UMF 128.)

### E.  THE ALLEGED DISCRIMINATORY OR RETALIATORY EVENTS

Plaintiff claims that as a result of discrimination and retaliation, six different Department supervisors engaged in the actions listed below against her, in the period 2017-2020.

#### 1.  Plaintiff was Denied Detective Assignments

Between 2015 and 2019, Plaintiff applied twice for detective positions with either the Narcotics Investigations Unit or Gang Investigations Unit.  (UMF 25.)  Then-Captain Castellow, and Dominic Barteau did not assign Plaintiff to these positions because she had already served a three-year rotation as Detective, and it was important to round out the experience of other officers. (UMF 25.)  Plaintiff was told at the time she was denied the Detective assignments that it was because the Department wanted to give other officers a chance.  (UMF 26.)  Plaintiff has no information other than her belief to support the denials were retaliatory.  (UMF 129.)  These denials are time-barred and cannot support Plaintiff's claims.

#### 2.  Plaintiff Receives Personnel Incident Report

On April 4, 2019, Sergeant Miller gave Plaintiff a Personnel Incident Report ("PIR") for leaving her FTO trainee unsupervised at the end of a shift without permission.  (UMF 27.) Lieutenant Azevedo was the Acting-Lieutenant responsible for supervising the FTO Program at the time, and directed Sergeant Miller to give Plaintiff the PIR.  (Id.)  Lieutenant Standridge was on duty that day and believed the PIR was warranted.  (Id.)  PIRs constitute written counseling and are removed from personnel files if the incident underlying the PIR does not recur within a year. (UMF 28.)  Plaintiff's conduct violated Department policies regarding Report Preparation and the

1  FTO Program, and was problematic because the trainee was writing a suspicious death report.

2  (UMF 29.)  Plaintiff admits she did not lose any pay because of the PIR, is not aware that it

3  affected her advancement opportunities, and has no reason to dispute PIRs only remain in an

4  officer's file for a year.  (UMF 30.)  Lieutenant Azevedo has given other officers PIRs, and

5  another male officer a similar PIR.  (UMF 31.) This incident is also time-barred for purposes of

6  Plaintiff's Title VII claims under the Order.

**3.      Department Requires a Resignation Letter for FTO Resignation**

8  On April 18, 2019, shortly after receiving the PIR, Plaintiff resigned from the FTO

9  Program.  (UMF 32.)  Captain Castellow asked for a resignation letter because the resignation was

10  associated with a pay decrease, and he wanted documentation to reflect Plaintiff's resignation was

11  voluntary and not punitive action due to the PIR.  (UMF 33.)  Plaintiff submitted the resignation

12  letter and was permitted to resign.  (UMF 34.)  This incident is also time-barred for purposes of

13  Plaintiff's Title VII claims under the Order.

**4.      Plaintiff's Claims against Sergeant Miller Regarding Denied and/or
          Cancelled Vacation Requests, and Gender Biased Write-Ups**

16  Sergeant Miller reviewed vacation requests.  (UMF 36.)  If the Department had sufficient

17  coverage, he submitted the request to his supervising Lieutenant for approval. (*Id*.)  He has never

18  approved and then arbitrarily cancelled a vacation request, because as a Sergeant, he does not have

19  the authority to do so.  (UMF 37.)  Plaintiff asserts Sergeant Miller denied her vacation requests in

20  2019.  (UMF 35.)  Sergeant Miller denies ever denying or cancelling approved time off for

21  Plaintiff due to her gender, sexual orientation, or any complaints she made about him or any other

22  members of the Department.  (UMF 38, 136.)  Sergeant Miller has written up male officers with

23  PIRs on many occasions.  (UMF 39.)  These incidents are also time-barred for purposes of

24  Plaintiff's Title VII claims under the Order.

**5.      Plaintiff Claims Lieutenant Standridge Denied Transfer Request**

26  Plaintiff claims Lieutenant Standridge denied a request to be transferred from Sergeant

27  Miller's supervision in April 2019.  (Moreno Depo. 26:22-28:17.)  Lieutenant Standridge would

28  not have denied Plaintiff's request to be transferred to a different supervisor due to her gender,

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

sexual orientation, or any complaint she made about any member of the Department. (UMFs 41, 42.) This incident is also time-barred for purposes of Plaintiff's Title VII claims.

### 6. Chief Kroutil Did Not Select Plaintiff for Sergeant Positions

Plaintiff applied to become a Sergeant through a promotional process for which eligibility was determined by January 18, 2019. (UMF 43.) The process involved a written application, a written exam, and an independent interview panel that conducted oral interviews. (UMF 47.) Chief Kroutil promoted four candidates off the list to Sergeant between February 2019 and July 2020. (UMFs 44, 45.) Captains Barteau and Castellow advised the Chief regarding the decisions, and Captain Castellow believed Officer Moreno's performance in the oral interviews was average and that other officers did better. (UMF 52.) The candidates selected between March 2019 and September 2019 were Cody Dean, Rose Gurule, Jose Dominguez, and Erik Martinez. (UMF 45.) They were chosen based on a variety of considerations, and each had more experience, better qualifications, abilities, and long-term leadership potential than Officer Moreno. (UMF 45.) Plaintiff never saw the list of candidates, how they ranked compared to each other, or how they performed on the written testing. (UMF 49.) She does not believe she was more qualified than them. (UMF 51.) An independent interview panel ranked Plaintiff lower than the candidates chosen. (UMF 50.) These incidents are also time-barred for purposes of Plaintiff's Title VII claims under the Order.

### 7. Chief Kroutil Did Not Select Plaintiff for Corporal Assignments

In March 2019, Chief Kroutil assigned Tyson Tashiro and Enrique Lara to Corporal, and Plaintiff believes she should have received these assignments instead of them. (UMF 54.) Corporal assignments are awarded based on many of the same considerations as Sergeant promotions, and in this case, Chief Kroutil considered the 2019 Sergeant eligibility list and promotional process, qualifications, experience and leadership potential of the officers. (UMF 55.) Plaintiff does not know how Tashiro and Lara performed compared to her on the written test for Sergeant, how the Oral Board ranked them, or where the Oral Board ranked her overall. (UMF 56.) Plaintiff never heard that her gender or sexual orientation had anything to do with not being selected for Corporal. (UMF 59.) An independent interview panel ranked Plaintiff lower than the

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

candidates selected. (UMF 57.) These incidents are also time-barred for purposes of Plaintiff's Title VII claims.

### 8. Plaintiff's 2018-2019 Performance Evaluation

Plaintiff received a performance evaluation in May 2019 for the May 2018-May 2019 evaluation period with a single below standard rating for attendance. (UMF 60.) The evaluation otherwise ranked Plaintiff as "Meets Expectations" or "Exceeds Expectations," in all categories. (UMF 61.) Comments to the evaluation note that Plaintiff had used over 178 hours of sick leave, and that she utilized a high amount of her sick leave in conjunction with approved vacation time or at the beginning and end of her work week, extending her time off. (Appendix, **Exhibit 19**.) Captain Castellow was regularly briefed on Thursdays by his Patrol Lieutenants regarding personnel issues, and Plaintiff's attendance came up during one of these briefings. (Appendix, **Exhibit G**, Declaration of Jake Castellow ("Castellow Decl." ¶ 14.) Captain Castellow directed Lieutenant Standridge to review Department records regarding Plaintiff's sick leave use, and if he confirmed there was sick leave abuse, to incorporate his findings into Plaintiff's evaluation, because sick leave abuse violates Department policy. (UMF 62.) Lieutenant Standridge reviewed Plaintiff's time sheets and schedule, and discovered she would take excessive sick time in connection with approved leaves. (UMF 63.) Plaintiff admits the evaluation did not impact her salary. (UMF 64.) No one told Plaintiff the evaluation impacted subsequent Corporal assignment decisions. (UMF 65.) This incident is also time-barred for purposes of Plaintiff's Title VII claims.

### 9. Lieutenant Standridge Confirms Dates of Plaintiff's Military Leave

Lieutenant Standridge served as the Department's military reservist, and was therefore in charge of monitoring who served military reserve duty, ensuring staffing for the duration of a military leave, and monitoring vacation, sick, and military leave time to ensure all Department time was accounted for correctly. (UMF 67.) In 2019, Plaintiff had a military leave date in the middle of the week, which she cancelled and then rescheduled. (*Id.*) Lieutenant Standridge called the number Plaintiff provided for her military command to verify her leave before rescheduling other officers to cover her absence, but it was not working. (*Id.*) He asked Officer Jesus Gallardo, a retired army reservist, if he had a working phone number that he could use instead. (*Id.*) This

16

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

incident is also time-barred for purposes of Plaintiff's Title VII claims under the Order.

### 10.    Plaintiff is Directed to Use Vacation, Not Bereavement Leave

In March 2019, a Sergeant told Lieutenant Standridge that Plaintiff wanted to take time off as bereavement leave because her grandmother was sick. (UMF 69.) Lieutenant Standridge contacted Human Resources, and they confirmed Plaintiff could take the leave as bereavement. (*Id*.) However, Plaintiff did not attend the funeral due to a family conflict. (*Id*.) Accordingly, Human Resources told Lieutenant Standridge to change her leave from bereavement to vacation. (*Id*.) This incident is also time-barred for purposes of Plaintiff's Title VII claims under the Order.

### 11.    Plaintiff Claims Lieutenant Azevedo Holds Her Reports for Review

Plaintiff claims Lieutenant Azevedo asked Sergeant Martinez to hold Plaintiff's reports so Lieutenant Azevedo could review them in or around June 2019. (SAC, ¶ 45.) Plaintiff never heard Lieutenant Azevedo say he was holding her reports for review for any retaliatory reason. (UMF 135.) Supervisors review officer reports for content and accuracy, and Patrol Lieutenants review reports all the time. (UMF 71.) Lieutenant Azevedo reviewed Plaintiff's reports, like the reports of all other officers he supervised, for content and accuracy, and did not review Plaintiff's reports for discriminatory or retaliatory reasons. (*Id*.) This incident is also time-barred for purposes of Plaintiff's Title VII claims under the Order.

### 12.    Lieutenant Azevedo Verbally Counsels Plaintiff

Department Lieutenants are asked to spot-check body camera video for quality control and training purposes. (UMF 73.) Lieutenant Azevedo reviewed 5-10 videos per week for this purpose. (*Id*.) In summer 2019, he reviewed Plaintiff's body camera video from an incident in which she had stopped a motorist for expired registration, who had a suspended license and false plates. (UMF 74.) Plaintiff issued a citation, and Lieutenant Azevedo counseled her that she should have stored or impounded the vehicle instead due to the evidence of fraud. (*Id*.) It was an informal training incident, not formal counseling or discipline. (UMF 75.) Lieutenant Azevedo's responsibility as a supervisor is to provide constructive feedback, and he typically gives feedback for purposes of training and improvement, not discipline. (*Id*.) He frequently counseled male officers following review of their body camera videos for training purposes. (UMF 76.) This

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

incident is also time-barred for purposes of Plaintiff's Title VII claims under the Order.

### 13. Plaintiff Claims She Was Denied Overtime at a Structure Fire

On February 18, 2020, a fire occurred at the Porterville Library, and two firefighters died in the fire. (Appendix, **Exhibit D**, Declaration of Lieutenant Mark Azevedo ("Azevedo Decl.") ¶ 14.) Plaintiff claims she was denied overtime for this incident. (SAC, ¶ 47.) Lieutenant Azevedo and Lieutenant Standridge were in charge of maintaining security of the fire area. (Azevedo Decl., ¶ 14; Appendix, **Exhibit F**, Declaration of former Lieutenant Richard Standridge ("Standridge Decl.") ¶ 17.) Lieutenant Standridge knew of Plaintiff's relationship with the firefighters, believed it was important for her well-being for her to remain on the scene, and authorized her to work overtime. (UMF 79.) Department records reflect Plaintiff worked overtime on February 18 and February 20. (*Id*.) The decisions Lieutenant Azevedo made during the fire had nothing to do with Officer Moreno, or with her gender, sexual orientation or prior complaints, and he was not focused on her but on his responsibilities related to the fire. (UMF 78, 134, 135.) This incident is also time-barred for purposes of Plaintiff's Title VII claims under the Order.

### 14. Plaintiff Claims She Was Denied Leave to Attend Funeral

There were three separate memorial services for firefighters who died in the Porterville Library Fire, two private, and one public. (UMF 81.) Plaintiff asserts Lieutenant Azevedo refused to let her go to the "funerals." (SAC, ¶ 48-49.) Lieutenant Azevedo does not know if Plaintiff went to the private services, but she asked him if she could attend the procession from the Library to the Tulare County Coroner's Office, and he agreed. (UMF 82.) Plaintiff participated in the procession, and attended part of the public funeral. (*Id*.) This incident is also time-barred for purposes of Plaintiff's Title VII claims under the Order.

### 15. Captain Castellow Did Not Assign Plaintiff to Work San Francisco Riots

In May 2020, Captain Castellow received an Assist Other Agency Office of Emergency Services ("OES") Request during San Francisco protests to send a two-person team. (Appendix, **Exhibit G**, Declaration of Police Chief Jake Castellow ("Castellow Decl.") ¶ 16.) He did not send Plaintiff because she was on injury or sick leave. (UMF 83.) He sent Sergeant Rose Gurule and

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

18

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

1    Officer Armando Perez because they were scheduled to work, not out sick or injured, and he only

2    needed two officers. (UMF 84.) He also wanted a Sergeant present to report back information

3    about the riot directly to a Lieutenant. (*Id.*)

**16.    Sergeant Martinez Calls Plaintiff an Hour Before Her Shift Begins**

5    On May 14, 2020, Sergeant Martinez asked Lieutenant Azevedo if he could call in another

6    officer because the Department was getting too busy. (UMF 86.) Lieutenant Azevedo approved

7    the action, and Sergeant Martinez selected Plaintiff at random from three officers on call. Officers

8    typically have a one-hour response time for their shift, so a phone call to an officer on-call, an hour

9    before their shift starts, is typical and appropriate. (UMFs 86, 87.)

**17.    Sergeant Ward Calls Plaintiff for Scheduled Range Training**

11    Plaintiff claims Sergeant Ward called her to report to the shooting range at the direction of

12    Lieutenants Nix and Azevedo. (SAC, ¶ 63.) Range training is scheduled one or two weeks in

13    advance through an interoffice memorandum circulated to all sworn personnel. (UMF 89.) In

14    May 2020, range training was scheduled for May 13 and 15, and at least 60 Department members

15    completed the training. (UMF 90.) Plaintiff was not singled out for attendance. (UMF 91.)

**18.    Plaintiff's NCSU Assignment Ends After One Year**

17    In 2019, the Department created the Neighborhood Crime Suppression Unit ("NCSU") to

18    proactively address matters called into the Police Chief or City Manager. (UMF 93.) The

19    Department assigned Plaintiff to the NCSU for a one year term in July 2019. (UMF 92.) Terms

20    were one-year, instead of a typical three-year rotation, because NCSU had previously been

21    disbanded and needed to be successful in its first year to show value, and the Department wanted

22    to incentivize other officers to join without having to wait three years. (UMF 93.) At the end of

23    the one-year assignment, all officers in the Unit were rotated off the Unit. (UMF 94.) Officers did

24    not receive incentive pay for this assignment so Plaintiff did not lose any compensation in

25    connection with the end of this assignment. (UMF 96.)

**19.    SWAT Team Physical Diagnostic Test**

27    In June 2020, Plaintiff had been cleared by her doctor for full duty. (UMF 98.) However,

28    she sought to be excused from a portion of a mandatory SWAT Team quarterly physical fitness

19

test. Lieutenant Nix informed her that she had to do the fitness testing or obtain a doctor's note warranting placement on light duty, as required by Department policy. (UMF 97.) Department policy 404.3.4 regarding "SWAT Ongoing Training" expressly states that officers who are "on light duty with a doctor's note" must take the fitness test within 30 days of return to regular duty, and therefore also envisaged that officers will provide a doctor's note to be placed on light duty and excused from the test. (UMF 99.) Plaintiff did not complete the test, went to the doctor, and was subsequently put on restricted duty for an on-the-job injury. (UMF 101.) No other officers declined to take the fitness test that day due to injury. (UMF 102.)

### 20. Plaintiff Claims Lieutenant Standridge Denied Her Sick Leave[2]

Plaintiff testified that Lieutenant Standridge denied her sick leave when she handed him sick leave notes between February and May 2020, and would call and text her when she was off duty asking when she would return. (Moreno Depo. 210:10-21.) However, Lieutenant Standridge was not responsible for granting or denying sick leave. (Standridge Decl., ¶ 24.) Sick leave was the responsibility of the on-duty Sergeant. (*Id.*) He could not and did not deny Plaintiff sick leave, and did not ask her for sick notes, due to her gender, sexual orientation, or any complaints she made about any officer in the Department. (UMF 103, 133.) To the extent these incidents are alleged to have occurred prior to April 2020, they are time-barred for purposes of Plaintiff's Title VII claims under the Order.

### 21. Plaintiff Claims Lieutenant Standridge Engaged in Gender-Biased GPS Monitoring

Plaintiff alleged that Lieutenant Standridge checked female, but not male officer, GPS just to harass them. (SAC, ¶ 40.) However, in his role as Lieutenant, he was not responsible for checking GPS. (Standridge Decl., ¶ 22.) On one occasion, he checked the GPS of a male officer because he claimed he conducted patrol checks he never conducted. (*Id.*) He has never conducted GPS checks to discriminate against, retaliate against, or harass anyone. (UMFs 104, 105.)

---

[2] Plaintiff's SAC and EEOC Charge alleged Lieutenant Standridge asked Plaintiff about why she was sick and what her doctor's notes said, not that he denied her leave. (SAC, ¶ 39; Defendant's Request for Judicial Notice, **Exhibit B**.) Accordingly, Plaintiff failed to exhaust her administrative remedies with respect to the new claim made in her January 30, 2024 deposition that Lieutenant Standridge denied her sick leave.

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

### 22. Plaintiff Claims Lieutenant Standridge Conducted Biased Vehicle Inspections

Plaintiff asserts that, in summer 2019 or early 2020, Lieutenant Standridge ordered two vehicle inspections of Plaintiff's vehicle when she was off duty. (SAC, ¶ 40; Moreno Depo. 281:15 - 282:7; 282:21-25.) As Lieutenant, Standridge was in charge of approximately 70 vehicles in the Department fleet. (UMF 107.) He conducted random vehicle inspections of every car in the lot, including on-duty and off-duty officers. (*Id.*) Vehicles were identified by vehicle number, not patrol number, so he usually could not determine which vehicle belonged to which officer. (UMF 108.) The timing was random, so no one was singled out. (*Id.*) He has never ordered vehicle inspections for discriminatory or retaliatory reasons. (UMFs 107, 109, 133.) These incidents are also time-barred for purposes of Plaintiff's Title VII claims under the Order.

### 23. Attempted Write-Ups and Unjustifiable Criticism

Plaintiff claims Lieutenant Standridge tried to write her up, and unjustifiably criticized her work and questioned her decisions since 2011 when she began working at the Department. (SAC, ¶ 34, 40.) Lieutenant Standridge did not give Plaintiff feedback for any purpose other than for training and improvement. (UMF 110.)

### F. PLAINTIFF'S 2020 RESIGNATION

Plaintiff submitted her written resignation from the Department to Chief Kroutil on July 6, 2020. (UMF 111.) The notice states that her decision was not easy and that she was thankful for the career she had there. (*Id.*) She met with Captain Castellow before she resigned to tell him she was resigning, teared up, and said she was going to miss her family at the PD. (UMF 112.) She also told Captain Castellow that she had family stuff going on, was going to get back in touch with her dad, and was going to potentially flip houses with him. (UMF 113.) Officer Moreno made the decision to leave Porterville PD after the June 2020 SWAT incident. (UMF 114.)

## IV. LEGAL STANDARD FOR SUMMARY JUDGMENT

When the party opposing the motion for summary judgment has the burden of proof at trial, the moving party has no burden to negate the opponent's claim. *See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).* "Instead, . . . the burden on the moving party may be discharged by 'showing' . . .

that there is an absence of evidence to support the nonmoving party's case." *Id.*; *see also, Fairbank v. Johnson*, 212 F.3d 528, 532 (9th Cir. 2000). A party moving for summary judgment may also carry its initial burden by producing evidence that negates an element of its opposing party's claim. *See Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000). If the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, *supra*, 477 U.S. at 322-23. Once the moving party meets the threshold burden, the non-moving party must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 *see also* Fed. R. Civ. P. 56(c). Unsupported allegations, subjective beliefs, or argument alone are insufficient. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987); *Hittle v. City of Stockton,* 76 F. 4th 877, 893 (9th Cir. 2023).

## V.  LEGAL ARGUMENT

### A.  THERE IS NO TRIABLE ISSUE AS TO PLAINTIFF'S DISCRIMINATION AND RETALIATION CLAIMS

#### 1.  Legal Standards for Plaintiff's Discrimination and Retaliation Claims

An employee alleging FEHA or Title VII discrimination or retaliation must survive the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973); *Guz v. Bechtel National Inc.*, 24 Cal.4th 317, 354 (2000). Plaintiff must first establish a prima facie case of discrimination or retaliation. *Payne v. Norwest Corp.*, 113 F. 3d 1079, 1080 (9th Cir. 1997). Thereafter, the burden of production shifts to the employer to present a legitimate business reason for the adverse action. *Id.* Once the employer carries this burden, a plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced was pretext. *Id.*

To establish a prima facie case of discrimination, Plaintiff must show that she: (1) was a member of a protected class; (2) was performing competently in the position; (3) suffered an adverse employment action; and (4) the adverse employment action was taken because of her protected class. *Guz, supra,* 24 Cal.4th at 354-55; *Rosas v. Town of Windsor*, 2005 WL 2999500,

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

*3 (N.D. Cal. 2005). To establish a prima facie claim of retaliation, a plaintiff must show: (i) involvement in a protected activity; (2) an adverse employment action; and (3) a causal link between the two. *Reynaga v. Roseburg Forest Prods.,* 847 F. 3d 678, 693 (9th Cir. 2017); *Brown v. Los Angeles Unified School Dist.*, 60 Cal. App. 5th 1092, 1105 (Cal. Ct. App. 2021.

A Plaintiff's protected class must be a substantial motivating reason for the alleged employment decision Plaintiff asserts is discriminatory or retaliatory. *See Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 232; *Andrade v. Arby's Restaurant Group, Inc.,* 225 F.Supp.3d 1115, 1135 (N.D. Cal. 2016). The requirement "… ensures that liability will not be imposed based on evidence of mere thoughts or passing statements unrelated to the disputed employment decision." *Harris v. City of Santa Monica*, *supra*, 56 Cal. 4th at 232. To avoid summary judgment, Plaintiff "must do more than establish a prima facie case, and deny the credibility of the [Defendant's] witnesses." *Horn v. Cushman &Wakefield Western*, 72 Cal. App. 4th 798, 807 (1999). Rather, Plaintiff must produce "specific, substantial evidence of pretext." (*Id.*) Plaintiff's speculation of discriminatory motive and intent, without substantial factual evidence, is inadequate. *Martin v. Lockheed Missiles & Space Co.*, 29 Cal. App. 4th 1718, 1735 (1994).

### 2. <u>Plaintiff Cannot Establish a Prima Facie Case</u>

Plaintiff cannot establish a prima facie case of discrimination or retaliation because Plaintiff's claims are almost entirely based on conduct that does not constitute legally cognizable adverse employment actions, and because there is no causal connection between Plaintiff's protected classes or protected activity and the alleged adverse actions.

#### a. The Vast Majority of the Alleged Employment Actions do Not Meet the Legal Standard

An actionable adverse action must "materially affect the compensation, terms, conditions, or privileges of the [plaintiff's] employment." *Adetuyi v. City and County of San Francisco*, 63 F. Supp. 3d 1073, 1085 (N.D. Cal. 2014) (internal citations and quotations omitted); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1053-54 (2005). However, most of the events Plaintiff alleges were adverse actions do not meet this standard. Plaintiff was not fired, demoted, or reassigned. Though Plaintiff's FTO and MAIT assignments ended, Plaintiff voluntarily resigned,

23

so any change in pay that resulted from those resignations cannot be attributed to the City. (UMFs 11, 32.) Comments perceived as rude, and criticisms perceived as unjustified, do not constitute adverse actions. *Murphy v. Kern*, 2020 WL 8510343, *6 (C.D. Cal. 2020) (yelling and rude comments not adverse action); *Kraus v. Presidio Trust Facilities Division/Residential Management Branch,* 704 F. Supp. 2d 859, 865 (N.D. Cal. 2010) (unjustified criticism not adverse action).

Plaintiff's 2018-2019 performance evaluation does not meet this standard. The attendance category was the only below standard rating in the entire evaluation, and Plaintiff has no evidence that the evaluation negatively impacted her employment in any way. (UMFs 60-65); *Hussain v. Regents of the Univ. of Cal.*, 2018 Cal. Super. LEXIS 54953, *16-17 (Cal. Sup. Ct. Jan. 29, 2018) (no adverse action where performance rated as satisfactory and no evidence of adverse effect).

Nor does the PIR Plaintiff received for leaving her FTO trainee unsupervised qualify; the Department removes PIRs from officers' files after a year when the issue underlying the PIR does not reoccur, Plaintiff did not lose any compensation because of it and is not aware that it impacted any advancement opportunities. (UMFs 28, 30.) The Department's requirement that Plaintiff submit a FTO resignation letter was not adverse action. Plaintiff's resignation and any associated pay decrease was voluntary, and the letter itself did not impact her employment in any way. (UMFs 30-34.) Similarly, that the Department and City Human Resources required Plaintiff to use vacation instead of bereavement leave was not adverse action, because Plaintiff voluntarily decided not to attend her grandmother's funeral, and use of bereavement leave for a funeral Plaintiff chose not to attend was inappropriate. (UMF 69.)

Lieutenant Standridge confirming dates of Plaintiff's military leave was not adverse action; he did not make any changes to Plaintiff's scheduled military leave and there was no impact at all on Plaintiff from that action. (UMF 67.)

Lieutenant Azevedo's review of Plaintiff's reports was not an adverse action. Even if Lieutenant Azevedo had asked Sergeant Martinez to hold Plaintiff's reports for review, Plaintiff has no evidence that review of such reports materially impacted the terms and conditions of her employment, as Lieutenants review reports all the time for content and accuracy as part of their

24

regular job responsibilities.  (UMF 71.)

Lieutenant Azevedo's verbal counseling of Plaintiff following a routine review of body camera footage for failing to store or impound a vehicle with false license plates was not adverse action.  (UMF 75.)  This was an informal training incident, not formal counseling or discipline, and Lieutenant Azevedo has provided similar training and improvement opportunities to almost every patrol officer under his supervision.  *See Cozzi v. County of Marin*, 787 F. Supp. 2d 1047, 1061 (N.D. Cal. 2011) (written warning not adverse action).

Plaintiff alleges Lieutenant Azevedo denied her overtime, but the alleged denial either was not a change in working conditions because Plaintiff continued to work the schedule she always worked, and her work schedule did not change at all, or was not material because records show Plaintiff worked overtime at the fire, and she was allowed to remain at the scene longer than any other officer.  (UMF 79.)  Plaintiff claims Lieutenant Azevedo denied her leave on one occasion to attend the funeral of two firefighter friends.  (SAC, ¶¶ 48-49.) However, Plaintiff acknowledges she attended the funeral procession, and part of the funeral (UMF 82), so even if Lt. Azevedo did deny or interfere with her attendance, Plaintiff cannot show it materially affected the terms and conditions of her employment like a termination, bad review, or denial or promotion would.  *See Cozzi, supra,* 787 F. Supp. 2d at 1061.)  Plaintiff's non-assignment to work riots on a single occasion when she was out injured (UMFs 83-84); being called into work an hour before her on-call shift started (UMFs 86-87); and having her vehicle inspected twice following routine random vehicle inspections (UMFs 106-109), all lacked material impact on Plaintiff's employment and are not cognizable adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006) (petty slights and minor annoyances insufficient).

Moreover, it is not adverse action to treat Plaintiff like every other member of the Department or Unit.  Requiring her to attend scheduled range training along with 60 other members of the Department is not adverse action because she was not singled out for participation and it did not change her schedule in any way.  (UMFs 89-90.)  Plaintiff's rotation off the NCSU assignment was not adverse action because she rotated off along with all other Unit members when the assignment was originally scheduled to end.  (UMFs 92-94.)  Similarly, Lieutenant Nix's request

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

that Plaintiff obtain a doctor's note to demonstrate she did not have to participate in mandatory SWAT Team physical testing was consistent with Department policy and requirements applicable to all SWAT Team members. (UMFs 97-99.) It is also not adverse action against Plaintiff to "attempt" an adverse action, or to take action against other female officers. Accordingly, the vast majority of Plaintiff's alleged actions are not legally cognizable adverse action.

        **b.**     **No Causal Connection between the Alleged Adverse Actions and Plaintiff's Gender or Sexual orientation**

Except for Sergeant Miller and Lieutenant Azevedo, Plaintiff does not allege that any supervisor who took any "adverse" action, made offensive comments about her gender or sexual orientation. After removing the events that do not meet the legal standard for adverse action, there are no actions remaining that were taken by either Sergeant Miller or Lieutenant Azevedo. **Such actions include**: Denial of Detective Assignments (Former Chief Kroutil) (UMFs 25-26); Non-Selection for Sergeant Positions (Former Chief Kroutil/Chief Castellow) (UMFs 43-53); Non-selection for Corporal Assignments (Former Chief Kroutil/Chief Castellow) (UMFs 54-59); "Denial" of Sick Leave (Lieutenant Standridge) (UMF 103). Plaintiff has no evidence these actions (or any alleged action) were based on her gender or sexual orientation. Former Chief Kroutil, Chief Castellow, and Lieutenant Standridge took each cognizable adverse action based on legitimate reasons as set forth above, and all officers deny taking any action against Plaintiff on account of her gender or sexual orientation. (UMFs 42, 46, 58, 59, 66, 68, 70, 72, 77, 78, 80, 85, 88, 91, 95, 100, 103, 104, 106.)

Moreover, Plaintiff does not assert that Sergeant Miller's comments about women were directed at Plaintiff. Sergeant Miller thought Plaintiff was a role model for others, respected her courage and ability, had respect for her, recommended her for Officer of the Quarter at least twice, and gave her his pick-up truck. (UMF 119.) Even if Miller made the comments Plaintiff alleges, she has no evidence they motivated any action he took with respect to her.

In addition, Plaintiff alleges that in a three year period, Lieutenant Azevedo asked her to hang out with him or texted him seven to ten times, but admits there was nothing sexual in the text messages he sent her, and that Lieutenant Azevedo never made any overt sexual advances. (UMFs

26

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

20-21.)  She has no evidence that Azevedo made any allegedly offensive comments or invitations

to her in connection with, or in close proximity to, any alleged adverse action he took against her.

Moreover, many of the alleged adverse actions Plaintiff attributes to either Miller or

Azevedo, either were not in fact taken by them, or were actually taken jointly or approved by

multiple members of the Department, and it would be inappropriate to attribute an unlawful motive

to many members of the Department based on alleged inappropriate comments or actions by a

single member unrelated to the relevant decisional processes that led to the action, and where the

action was otherwise justified.  *See also Poland v. Chertoff*, 494 F. 3d 1174, 1184 (9th Cir. 2007)

(Plaintiff must establish the decision was not independent because the biased subordinate

unlawfully tainted the decision); *Gilbrook v. City of Westminster*, 177 F.3d 839, 855 (9th Cir.

1999) (leaving open possibility that a final decision-maker who lacks an improper motive could

absolve subordinate of liability for retaliatory acts).  For example, Captain Castellow ordered

Plaintiff to provide a resignation letter, and that message was relayed to Plaintiff by Sergeant

Miller, but Miller did not impose the requirement; he was just a messenger.  (UMF 33.)

Lieutenant Azevedo was not the only supervisor involved in the PIR decision; Lieutenant

Standridge discovered that Plaintiff left her trainee unsupervised and also approved of the PIR.

(UMF 27.)  Similarly, Plaintiff's 2018-2019 performance evaluation was written by Sergeant

Miller and approved by Lieutenant Azevedo, but the comments regarding Plaintiff's attendance

were incorporated at Captain Castellow's direction, after the review of Plaintiff's attendance

records was conducted by Lieutenant Standridge.  (UMFs 62-63.)  Neither Sergeant Miller nor

Lieutenant Azevedo were involved in the Sergeant promotional or Corporal assignment decisional

processes at all.  (UMFs 44, 52, 54, 55.)  Plaintiff lacks evidence that any cognizable adverse

employment action was due to her gender or sexual orientation.

     **c.**     **No Causal Connection Between the Alleged Legally Cognizable Adverse Actions and Plaintiff's early 2019 protected activities**

Plaintiff testified she reported alleged harassment between February and May 2019.[3]

---

[3] Plaintiff failed to exhaust administrative remedies regarding any retaliation claims based on complaints to individuals other than Chief Kroutil in May 2019.  Plaintiff did not allege complaints to individuals other than Kroutil in either her EEOC charge or SAC.  (Defendants' Request for Judicial Notice, **Exhibit A**; SAC, ¶ 24.) The complaints that Plaintiff made were within her personal knowledge at the time she filed the

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

1    Most of the alleged adverse actions that meet the legal standard occurred prior to this period;

2    therefore, there can be no causal connection between Plaintiff's protected activity and the

3    alleged adverse action. Specifically, denials of Detective assignments occurred between 2015

4    and 2019; therefore, they could not be retaliation for her protected activity, which occurred

5    after these denials. (UMF 25.) Similarly, Plaintiff's non-selection for Corporal assignments

6    occurred in March 2019, and Chief Kroutil made those assignments before Plaintiff

7    complained to him in May 2019, so these Corporal assignments could not be the result of

8    retaliation by Kroutil. (UMF 54; Appendix, **Exhibit 5**, Plaintiff's Responses to Defendant

9    City's Special Interrogatories, Set One, No. 5 & No. 7.) Moreover, two of Chief Kroutil's

10   Sergeant promotions occurred in March 2019, and could not be retaliation for any complaints

11   that Plaintiff made to Kroutil in May 2019. (UMF 53.) Further, Kroutil did not make any

12   Sergeant promotional decision or Corporal assignments for retaliatory reasons. (UMF 131.)

13   Chief Castellow also did not make decisions based on Plaintiff's complaints. (UMF 132.)

14        In addition, several of the alleged adverse actions occurred more than three months

15   after Plaintiff complained in May 2019. For example, Plaintiff's allegations regarding

16   Lieutenant Standridge's denial of overtime (UMF 79), and leave to attend the funeral of

17   firefighters (UMFs 79, 81, 82) occurred in or around February 2020, almost nine months after

18   she alleges she complained. Plaintiff's allegations that Captain Castellow did not assign her

19   to work riots in San Francisco (UMF 83), that she was called to work before her shift began

20   (UMF 86), that she was called in for range training (UMF 90-91), and the SWAT physical

21   fitness testing incident (UMF 97) all occurred in May or June 2020, a year after she

22   complained. Such a long gap suggests there is no causal connection at all between Plaintiff's

23   protected activity and these actions. *Clark County School Dist. v. Breeden* 532 U.S. 268,

24   273-247 (2001) (three months may be too long); *Loggins v. Kaiser Permanente Internat.*, 151

25   _____

26   charge, and complaints to individuals other than Chief Kroutil before May 2019 were not likely to be
     uncovered in the administrative investigation of Plaintiff's complaint. See *Okoli v. Lockheed Technical*
     *Operations Co.*, 36 Cal. App. 4th 1607 (Cal. Ct. App. 1995); *Bowie v. Ashcroft*, 283 F. Supp. 2d 25 (Dist.

27   D.D.C. citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 US. 101, 105 (2002). Moreover, Plaintiff's
     charge was extremely specific, and therefore this court should not permit expansion of Plaintiff's claim into

28   other theories of liability. See, *Okoli*, *supra*, 36 Cal. App. 4th at 1617.

1   Cal.App.4th 1102, 1110, fn. 6 (2007) (nine-months insufficient).

2       Importantly, Plaintiff admits she never heard Lieutenant Azevedo say he was holding

3   her reports or taking any other action against her because she had rejected his requests to

4   hang out with him, and never heard anyone else say they knew he was taking action against

5   her for that reason.  (UMF 135.)  She asserts that he asked her to hang out, and that she

6   declined those invitations 7-10 times, but that his retaliation began because she made a snarky

7   comment to him about the reason for his divorce (UMF 23).  Making a snarky comment is

8   not protected activity on which a retaliation claim can be based.  Thus, Plaintiff's retaliation

9   claims based on Azevedo's conduct fail for this reason as well.

10      Finally, each member of the Department who was responsible for, or participated in,

11  taking any action against Plaintiff denies taking action against Plaintiff due to any complaint

12  that she made, rather – as explained above – the actions were taken based on legitimate

13  reasons.  (UMFs 129-137, 142.)  Therefore, Plaintiff lacks sufficient evidence to establish any

14  action that occurred after her May 2019 complaint to Chief Kroutil was substantially

15  motivated by the complaint, and cannot establish causation.

16      **d.    Plaintiff's Title VII Claims Fail Because All Legally Cognizable**
        **Adverse Actions Occurred Before April 2020**

17      This Court concluded that with respect to Plaintiff's Title VII discrimination and retaliation

18  claims, alleged conduct that occurred before the statute of limitations cutoff of April 2020 is time

19  barred.  (Order, 17: 21-25.)  The legally cognizable adverse actions, including denial of Detective

20  assignments (former Chief Kroutil); Non-Selection for Sergeant (former Chief Kroutil/Chief

21  Castello); Non-selection for Corporal assignments (former Chief Kroutil/Chief Castello); and

22  "denial" of sick leave (Lieutenant Standridge)[4] occurred before this deadline.  Accordingly,

23  Plaintiff's Title VII claims fail entirely for lack of actionable adverse action.

24

25  [4] Plaintiff asserts Lieutenant Standridge denied her sick leave between February and May 2020, but she
    cannot prove he denied her leave after the applicable cutoff because he denies he did so, the Department has
26  no records he did so, and she does not recall exactly when he allegedly did so.  Plaintiff also raised this
    allegation for the first time in her January 2024 deposition, and to the extent it is not time-barred, the Court
27  should conclude that Plaintiff either failed to exhaust administrative remedies with respect to the allegation,
    or there is simply no evidence of unlawful discriminatory or retaliatory animus by Standridge toward
28  Plaintiff, and Plaintiff cannot state a claim.

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

### 3.    The City Has Demonstrated Legitimate Business Reasons

Even if Plaintiff has demonstrated a prima facie case of discrimination or retaliation after eliminating personnel actions that do not qualify as "adverse action," the City had legitimate business reasons for each of the alleged legally cognizable adverse actions, as detailed fully in the Defendants' Statement of Facts and Declarations filed with this Motion.  In summary, Chief Kroutil, with input from then-Captain Castellow and Captain Barteau, based decisions regarding Sergeant promotions and Corporal assignments on an extensive promotional process, including a written examination and independent panel interviews, as well as experience, reputation, leadership skills and the needs of the Department at the time.  (UMFs 43-59; 129-137, 142.)  Plaintiff was denied Detective assignments because she had already served her three-year rotation, and the Department wanted to give other Detectives an opportunity to round out their skills.  (UMF 25.)  To the extent this Court determines that any other action toward Plaintiff qualifies as "adverse action" and that she has otherwise has prima facie claims, the City has submitted evidence in five supporting declarations reflecting detailed, lawful reasons for such action.

### 4.    Plaintiff Cannot Demonstrate Pretext

Once the employer demonstrates that its actions were based on legitimate non-discriminatory and non-retaliatory business reasons, Plaintiff bears the ultimate burden to prove the proffered reasons were pretexts and that the employer engaged in intentional discrimination/retaliation.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000).  Here, there is not a shred of evidence that the City's legitimate justifications are false, much less the "substantial evidence" required of Plaintiff.  Accordingly, there is no triable issue of fact as to Plaintiff's discrimination or retaliation claims.

### B.    PLAINTIFF WAS NOT CONSTRUCTIVELY DISCHARGED

Plaintiff alleges "constructive discharge" was the result of the discrimination and retaliation she experienced.  (SAC, ¶¶ 18, 59, 63, 71, 75.)  Plaintiff was not constructively discharged; she resigned. She does not have evidence to support the allegation.

Constructive discharge occurs when the employer's conduct effectively forces an employee to resign.  *Cloud v. Casey*, 76 Cal. App. 4th 895, 902 (Cal. Ct. App. 1999).  To be deemed a

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

constructive discharge, an employer must "create or permit working conditions so intolerable or aggravated that a reasonable person in the employee's position would feel compelled to resign." *Id.*, citing *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1244-55 (1994). A poor performance rating does not trigger a constructive discharge. *Id.* citing *Turner*, *supra*, 7 Cal. 4th at 1251. The fact that gender discrimination occurred is also insufficient. *Cloud, supra,* 76 Cal. App. 4th at 905. The standard for constructive discharge is an objective one. *Simers v. Los Angeles Times Communs. LLC*, 18 Cal. App. 5th 1248, 1271-72 (Cal. Ct. App. 2018). Plaintiff's subjective reaction to standard employer disciplinary practices, such as criticism, investigation, demotion, and performance plans, are "well within an employer's prerogative for running its business" and will not constitute constructive discharge unless they involve a pattern of continuous mistreatment. *See id.* at 1271.

Here, Plaintiff was not coerced into resigning. She admits that she voluntarily resigned to take another job at the Department of Development Services ("DDS"). (UMF 115.) Moreover, many facts belie Plaintiff's constructive discharge allegation. She applied to work at DDS as a Peace Officer 1 on June 9, 2019. (UMF 116.) She interviewed with DDS in November 2019, but asked DDS to pause the hiring process between February and April 2020. (UMF 117.) A reasonable person who felt they were being subjected to egregious working conditions would not press the pause button on their escape route. Thus, her allegations fail the objectivity standard.

Additionally, Plaintiff's 2020 written resignation stated that her decision was not easy and that she was thankful for the career she had at the Department. (UMF 111.) When she spoke to then-Captain Castellow about her decision, she told him she was going to miss her family at the PD. (UMF 112.) She also told him she had family stuff going on, was going to get back in touch with her dad, and maybe flip houses with him. (UMF 113.) Her comments reflect she had fond familial feelings for the Department, was leaving for reasons connected with family, and made a difficult, but voluntary, decision to leave. *Harkless v. Pac. Power & Light*, 2021 U.S. Dist. LEXIS 163774, *9 (E.D. Cal. 2021) (resignation cannot be one rational option of several).

Plaintiff also claims the SWAT Team physical fitness testing incident was the "last straw" in her decision to leave the Department. (SAC, ¶ 56.) She asserts that she "could no longer work

31

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

1    for a police department that did not care about her or her health." (*Id.*) This belief was

2    unreasonable, and fails to explain why she had applied for the job she eventually accepted a year

3    before the physical fitness test occurred.  In addition, the physical fitness testing was mandated by

4    Department policy for members of the SWAT Team, and Plaintiff has no evidence that any

5    similarly situated male was permitted to decline to take the test due to injury without a doctor's

6    note, or that the Department did not care about her health.  (UMF 102.)  That the Department

7    required Plaintiff to get a doctor's note, and that Plaintiff was not required to perform the test,

8    show that they did care about her health.  (UMFs 97-99, 101.)  This incident would not cause a

9    reasonable person to resign.

10         Importantly, the allegedly offending supervisors were no longer engaged in the alleged

11    offensive conduct at the time of Plaintiff's resignation.  Sergeant Miller retired on September 1,

12    2019, so he had not been present in Plaintiff's work environment for ten months at the time of her

13    resignation in July 2020.  (UMF 16.)  Lieutenant Azevedo did not ask her to hang out with him

14    again after February 2019, 15 months before Plaintiff's resignation.  (UMF 24.)  In addition,

15    Plaintiff was off work due to injury or military leave for several months between July 2019 and

16    July 2020, and was not present at work for several weeks prior to her resignation, so was not in a

17    work environment immediately prior to her resignation, much less an intolerable one.  (UMF 122.)

18         Finally, Plaintiff does not sufficiently allege a pattern of continuous mistreatment.  Instead,

19    she identifies numerous, disconnected standard or trivial employer actions by a multitude of

20    supervisors over a five year period that were well within their prerogative to run the Department.

21    Accordingly, there is no evidence of a constructive termination.

22    / / /

23    / / /

24    / / /

25    / / /

26    / / /

27    / / /

28    / / /

## VI.    <u>CONCLUSION</u>

Based on the foregoing, Defendants respectfully request the Court grant partial summary judgment as to Plaintiff's first, second, fourth and fifth claims.

Dated:  April 1, 2024                    LIEBERT CASSIDY WHITMORE


By:  */s/ Abigail W. Clark*
      Jesse J. Maddox
      Abigail W. Clark
      Sue Ann Renfro
      Attorneys for Defendants CITY OF PORTERVILLE,
      GARY MILLER, and MARK AZEVEDO

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

## PROOF OF SERVICE

I am a citizen of the United States and resident of the State of California. I am employed in San Francisco, State of California, in the office of a member of the bar of this Court, at whose direction the service was made. I am over the age of eighteen years and not a party to the within action.

On **April 1, 2024,** I served the foregoing document(s) described as **DEFENDANTS CITY OF PORTERVILLE, GARY MILLER AND MARK AZEVEDO'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** in the manner checked below on all interested parties in this action addressed as follows:

| | |
|---|---|
| Lawrence J. King | Mark K. Kitabayashi |
| Law Offices of Lawrence J. King | Wiley R. Driskill |
| 11 Western Avenue | Lozano Smith |
| Petaluma, CA 94952 | 7404 N. Spalding Ave. |
| Telephone: 707.769.9791 | Fresno, CA 93720-3370 |
| Facsimile: 707.763.9253 | Telephone: 559.431.5600 |
| Email: kingesq@pacbell.net | Facsimile: 559.261.9366 |
| | Email: mkitabayashi@lozanosmith.com |
| | wdriskill@lozanosmith.com |

*Attorneys for Plaintiff Amber Moreno*        *Attorneys for Defendant Michael Benas*

☑ **(BY ELECTRONIC SERVICE PROVIDER)** I am readily familiar with the firm's practice for filing electronically. Through use of the Court's CM/ECF electronic filing system, I arranged a true and correct copy of the above-reference documents to be electronically served to the e-mail address(es) registered with the court this day in the ordinary course of business following ordinary business practices.

Executed on **April 1, 2024**, at San Francisco, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*/s/ Geraldine D. Ramos*
Geraldine D. Ramos

Proof of Service

12321388.9 PO090-035